JAMES C. MOORE & als. versus PROTECTION INS. CO.

Where it was made a condition of a policy of insurance, that in case of loss, " the assured shall, if required, submit to an examination under oath by the agent or attorney of the company, and answer all questions touching their knowledge of any thing relating to such loss or damage, or to their claim therefor, and subscribe such examination, the same being reduced to writing;" if such examination be once made and completed, the assured cannot be required by the company to submit to a further *examination under oath* afterwards, although at the time of making the oath he may have assented to a further and future examination.

Where in a policy insuring a stock of dry goods, it is provided that the policy shall be void, if " the risk shall be increased by any means whatsoever within the control of the assured, or if such building or premises shall, with the assent of the assured, be occupied in any way so as to render the risk more hazardous than at the time of insuring;" and among the articles denominated hazardous is cotton in bales ; — yet if cotton in bales is merely kept for sale as a part of the stock of dry goods, it does not vitiate the policy, unless the jury should find that the keeping of such cotton increases the risk.

Where in a policy upon a store and stock of dry goods, one of the conditions protected the insurers against the appropriating, applying or using the store for keeping or storing goods of a hazardous character,— *held*, that the keeping of a hazardous article for sale among the other goods was not an infraction of that condition. Such a condition is merely a protection against appropriating the store for a depository of such goods, as a sole or principal business.

The affidavit of the assured, made in pursuance of the requirement of the policy, and his examination before the company's agent, after being introduced into Court without objection, are proper evidence for the consideration of the jury as to the amount of the loss.

The fact that the assured in his affidavit estimated the value of the goods consumed, at $2800, and the jury returned a verdict for $1853 only, is not such evidence of fraud and false swearing, as would justify the Court in granting a new trial.

TENNEY J. — The plaintiffs procured " three thousand dollars on their stock in trade, consisting of dry goods, kept in a frame store, occupied by themselves in Belfast," to be insured by the defendants, for the term of one year, by a policy dated Dec. 15, 1845. Conditions are annexed to the policy, which by its terms constitute a part of it. By the tenth condition, it is necessary after a loss by fire, that the assured should forth-

with give notice thereof to the company, and as soon as possible deliver in a particular account of such loss or damage, signed with their own hands, and verified by their oath or affirmation ; and shall also procure a certificate under the hands of a magistrate or notary public (most contiguous to the place of the fire, and not concerned in the loss as a creditor or otherwise, or related to the insured or sufferers) that he has made due inquiry into the cause and origin of the fire, &c. ; and the assured shall also if required, submit to an examination under oath by the agent or attorney of the company, and answer all questions touching their knowledge of any thing relating to such loss or damage, or to their claim therefor, and subscribe such examination, the same being reduced to writing ; and until such proofs, declarations and certificates are produced, and examination if required, the loss will not be deemed payable. And if there appear any fraud or false swearing, the insured shall forfeit all claim under the policy. By the policy it is agreed and declared, to be the true intent and meaning of the parties thereto, " that in case the above mentioned premises shall at any time after the making and during the continuance of this insurance, be appropriated, applied or used to or for the purpose of carrying on or exercising therein, any trade, business or vocation, denominated hazardous or extra hazardous, or specified in the memorandum of special rates, in the terms and conditions annexed to this policy, or for the purpose of keeping or storing therein any of the articles, goods or merchandize, in the same terms and conditions denominated hazardous or extra hazardous, or included in the memorandum of special rates," &c. " then and from thenceforth so long as the same shall be appropriated, applied, used or occupied, these presents shall cease and be of no effect."

The second condition, annexed to the policy is, " if any insurance is effected upon any building, or goods, in this office, either by the original policy or the renewal thereof, the risk shall be increased by any means whatsoever within the control of the assured, or if such building or premises, shall with the assent of the assured be occupied in any way, so as to ren-

Moore *v.* Protection Insurance Co.

der the risk more hazardous, than at the time of insuring, such insurance shall be void and of no effect."

Among the articles denominated hazardous, is cotton in bales.

This action is upon that policy, which the plaintiffs introduced, and evidence, that the store and the goods therein were consumed by fire, on the twentieth day of March, 1846; together with the affidavit of James C. Moore, one of the plaintiffs, and the certificate of Andrew T. Palmer, a justice of the peace, who it was admitted resided most contiguous to the fire; the affidavit and certificate were dated March 22, 1846. It is not denied on the part of the defendants, that those papers contained all that was contemplated by the policy, that they should contain, or that they were not made and produced in proper season after the fire. They were a substantial performance of those acts, as preliminary steps necessary, before the commencement of the action, unless the defendants required an examination of the plaintiffs under oath. This requirement was made, and the plaintiffs produced a document without objection, exhibiting such examination, in writing, signed by said Moore, and verified by oath, taken April 4, 1846. It appeared from the testimony of the defendants' agent, who took the examination, that Moore answered all the questions put to him, and upon being informed, that a further examination from some one from the office would be wanted, he made no objection, but, as the agent understood, gave his assent; and when called upon on April 14, 1846, submitted to a further examination before the defendants' attorney, but declined to make oath to the answers there given to the questions propounded. It is insisted, that for this omission, the action cannot be maintained.

By the tenth condition annexed to the policy under which such examination may be required by the insurers, this examination before their agent or attorney, is not a necessary prerequisite to the commencement of the suit, unless the assured are called upon to submit to it. If the demand is made, it becomes essential to the right of recovery, and it must be done before the commencement of the suit. When once fully made,

reduced to writing, signed by the party examined, and verified by oath, this condition in the policy becomes fulfilled. A further examination afterwards, is not required by the spirit or the terms of the policy, and the conditions annexed, and therefore is not a preliminary step, material to the maintenance of the action. It does not appear from the case that the examination before the defendants' agent, was not as full as the latter desired to make it. Every question proposed was answered, the whole was reduced to writing, signed and sworn to, by the person, who was examined. It does not appear to have been in contemplation either by Moore or the agent, that if a further examination should be required, that it was to annul the effect of that already completed, so far as it was material to perfect the plaintiffs' right, to call for indemnity, for the alleged loss. If Moore had consented after the first examination, to submit to another, and to make oath thereto, when requested, it could not be a waiver of the plaintiffs' right under the policy, to commence a suit upon it, if such right existed without such consent. It moreover appears from the case, that Moore did submit to a full examination afterwards, when required by the defendants' attorney, which was all, which he assented to do, according to the evidence of the defendants, and the facts so obtained, were competent evidence to be used in the trial by them, notwithstanding they were not verified by oath.

It is contended, that as cotton in bales had been kept in the store at some time within the period covered by the policy, the Court should have given the instruction requested to the jury, " that if they find the plaintiffs kept or had in their stock cotton in bales at the time of the fire, this action is not maintainable." The refusal to give this instruction cannot be legal ground of complaint, unless there was evidence, that cotton in bales was in the stock of goods at the time of the fire, and that keeping or having such in their stock was prohibited by the policy. If the keeping of such article was unauthorized, without an increase of the risk, by any means whatsoever within the control of the assured, it was not designed by the parties, upon a proper construction of the contract, that it should be an absolute

forfeiture of all right of the assured under the policy, but that such right should be suspended and of no effect, so long as such article should be kept in the store. The case does not find, that there was any evidence, that such hazardous article was there at the time of the fire, and the question of fact to be submitted to the jury, as the basis of the *legal* principle contended for, was hypothetical. If there was plenary evidence that such an article was in the store, and was consumed therewith, the policy would not necessarily be forfeited, or its operations suspended thereby. The policy contains no stipulation, that the goods in the store embraced no article, which was hazardous. A certain amount "on the stock in trade of the plaintiffs, consisting of dry goods, kept in a store, was covered by the policy, which prohibited the appropriation, application or use of the premises for carrying on, or exercising any business, which was hazardous or extra hazardous, and for the purpose of keeping or storing goods of that character. The term *premises*, when considered in connection with the whole policy, must have been intended the store, in which the goods were kept, and not the goods themselves, which were the subject of the insurance. By any other construction certain language used in reference to the *premises*, must be regarded as unmeaning or absurd. The restriction does not extend to the keeping of a single article denominated hazardous or extra hazardous as a part of the dry goods stock in trade, provided the store was not appropriated, applied or used for purposes not intended by the language of the policy. These purposes were of a general nature, and distinguished from that of keeping a stock of dry goods for sale. It is not pretended, that the store was used for carrying on a business unauthorized by the policy ; and if the plaintiffs kept or had in their stock a hazardous article, it is by no means the same thing as appropriating, applying or using the store for keeping or storing therein, goods and merchandize, which was hazardous. In the language of this Court in the case of *N. Y. Equitable Insurance Co.* v. *Langdon*, 6 Wend. 628, which was an action upon a policy containing substantially the same conditions as the one now under consideration. "It

appears to me, that the word storing was used by the parties in this case in the sense contended for by the plaintiff, *viz.* a keeping for safe custody, to be delivered out in the same condition substantially, as when received; and applies only, when the storing or safe keeping is the sole or principal object of the deposit, and not when it is merely incidental, and the keeping is only for the purpose of consumption." *Langdon* v. *N. Y. Equitable Ins. Co.*, 2 Hall, 226.

If the jury had found that the keeping of cotton in bales in the store, increased the risk, and that such an article was kept in the store by the plaintiffs at any time during the period covered by the policy, the contract of insurance was thereby rendered void under the second condition. But the case does not show that any question of this kind was presented to the jury, or that the Judge was requested to instruct them upon such point.

Was the affidavit of Moore, and his examination before the defendant's agent competent evidence for the consideration of the jury, on the question of the amount of the loss? The facts contained in documents of this kind, were intended as evidence; and they were required to be in that form, that they might be preserved, and so verified, that they could not be regarded as statements casually or inconsiderately made, and subject to be modified or explained by recollections which might be subsequently called up. They are material for the protection of the rights of insurers. One of them was required to be made immediately after the fire, and the other as soon as the underwriters should demand it, and before they should be exposed to be affected, to so great extent, as they might be by delay, by facts, having little or no foundation in truth, stated by the party interested to increase the amount of his claim. This evidence may be very important, to confine the demand of the assured to the proper limits; and it may also be that which the party attempted to be charged, would prefer should be adduced by his adversary. When introduced it would be evidence for the jury to consider, like other facts in proof. Facts, which are inadmissible for the party offering them, if objected to, may be

competent, when put in by consent or without objection. The documents, which the defendants insisted could not be considered, and their contents weighed by the jury, touching the amount of the loss, were introduced by the plaintiffs, without objection. They were necessary to show that the claim set up was payable before the institution of the suit. The right of the defendants to require this preliminary proof, was not waived by them. They may have supposed that it was for their benefit to require their introduction for some purpose ; and when legitimately before the jury, no rule of law would prohibit them from giving these papers due consideration in connection with all the other evidence in the case.

It was contended at the trial, that the plaintiffs were guilty of fraudulent conduct and false swearing in the preliminary affidavit, and therefore they were not entitled to recover. Much evidence was introduced upon this point, which is reported ; and a motion was filed that the verdict for the plaintiffs be set aside because it was against evidence. By the preliminary affidavit, the affiant estimated the value of the goods in the store at the time of the fire, at the sum of twenty-eight hundred dollars. The jury returned a verdict for the plaintiffs for the sum of eighteen hundred and fifty-three dollars in damages. The defendants rely particularly upon this verdict as proof of false swearing on the part of the affiant, showing as it is contended, that the jury disregarded the facts asserted and sworn to in the affidavit. The jury were properly instructed, that if they found that there was false swearing on the part of the plaintiffs, they would not recover. It cannot be assumed, that the instruction was disregarded, without convincing evidence. The value of the goods in the store at the time of their destruction was only a matter of judgment by Moore who made the estimation, and the affidavit founded thereon. No account of the stock had been taken previous to the fire, and the books were consumed with the goods and the store. No basis existed, by which the amount of the loss could be ascertained with any degree of accuracy. The judgment of Moore in his estimation of the value of the

Moore *v.* Protection Insurance Co.

property lost, was properly considered with all other evidence upon the same point. They might believe that his interest in the question, would affect his judgment to some extent, though honestly exercised. The general knowledge of the jury in relation to the kind of property consumed, and its value, might also have had upon their minds a legitimate influence. Other facts and circumstances on the same question, coming from other sources, would have their proper effect ; and when the whole was weighed, it might have produced the conviction that Moore had erred in opinion, without being guilty of any dishonest intention.

The case of *Levy* v. *Baillie & als.* 7 Bing. 349, has an analogy in some respects to the case before us. The verdict being for a less sum, than the estimation of the loss by the plaintiff, it was contended by the defendant therein, that it established the fact that there was fraud and false swearing. The verdict was set aside on the payment of costs. But inasmuch as the case shows, that it was also insisted that the verdict was against evidence, and the Court do not even intimate the grounds of their decision, it cannot be inferred, that they were governed by the principle here contended for, as one of legal obligation.

The evidence bearing upon the questions raised by the defence, was peculiarly for the consideration of the jury. It was necessary that fraud and false swearing, of which the defendants contended the plaintiffs were guilty, should be affirmatively and satisfactorily established, before that defence could prevail. The proof of this was not of such a character, as to authorize the Court to say, that the jury was under such improper influence, that their verdict should be disturbed.

*Exceptions and motion overruled.*

*Kent,* for plaintiffs.

*Hobbs,* for defendants.