## Case No. 12,830.

### SIBLEY v. ST. PAUL FIRE & MARINE INS. CO.

[9 Biss. 31; 7 Reporter, 169; 8 Ins. Law J. 461; 11 Chi. Leg. News, 115; 8 Reporter, 808.] [1]

Circuit Court, N. D. Illinois. Dec., 1878.

INSURANCE — FRAUDULENT PROOF OF LOSS — ACCURACY IN PROOF — ARSON — OVER-VALUATION — PREPONDERANCE OF EVIDENCE.

1. If an insured party who has suffered a loss, knowingly and with the intention to defraud the insurance company, which had insured his stock of goods, makes up in his proof of loss a false and exaggerated statement of the amount and value of the stock of goods in store at the time of the fire and destroyed or damaged thereby, he thereby forfeits all claim against the insurance company.

2. The insured is not obliged to state his loss in dollars and cents with arithmetical accuracy, but he must disclose the whole truth, and nothing but the truth, as nearly as he can arrive at it by a reasonable and honest effort on his part.

3. The fact that the insured had been tried and acquitted on a criminal charge of arson in connection with the burning of his store, is entitled to no weight in a civil suit on the policy, in which arson is alleged as a defense.

4. Where an insurance company, in defense of an action on an insurance policy, alleges arson or a fraudulent over-valuation of the property destroyed, it sustains the burden of proof and must make out its defense by a satisfactory preponderance of evidence.

5. Mere number of witnesses does not constitute preponderance of evidence, and the jurors may believe one in opposition to several, if satisfied that the truth is with him.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 7 Reporter, 169, and 8 Reporter, 808, contain only partial reports.]

Action on a policy of insurance [by Charles W. Sibley against St. Paul Fire & Marine Insurance Company].

J. M. Flower and Ira W. Buell, for plaintiff.

E. A. Otis and A. N. Waterman, for defendant.

BLODGETT, District Judge (charging jury). This is a suit upon a policy of insurance issued by the defendant company, whereby the defendant insured the firm of Sibley & Chester to the extent of $1,000, against loss by fire on a stock of goods in the store occupied by Sibley & Chester, in the Davis Block on Second street, in the city of Clinton, Iowa. [All the questions in regard to title are disposed of by the amendment which has been made, so that I will omit so much of my charge as I have prepared in reference to that subject.] [2]

The plaintiff claims, and it is conceded, that a fire occurred in the plaintiff's store on the morning of the 19th of January, 1876, whereby the stock of goods insured was destroyed or substantially destroyed; and the conditions precedent of the policy have been practically complied with. The policy requires that proofs as to the nature and extent of the loss shall be furnished to the defendant within a reasonable time after the fire. This is a condition precedent, for the purpose of giving the insurance companies an opportunity to investigate the claim, before being obliged to make payment. It is admitted that proofs were furnished on the 22d of June succeeding the fire, which were supplemented or amended by other proofs furnished at the request of the insurance company on the 12th day of July, and it does not seem to be insisted that, under the circumstances, this was not apt time. The delay which took place, under some circumstances, might have been such as to have entitled the company to resist the loss; but under the circumstances under which this delay occurred, I think no question is made but what the plaintiff did furnish the proofs of loss which were required in apt time; so that you will not be troubled with that question, as no question is made before the court or jury on that point.

Defense on the merits, then, is made on two grounds: First—That the fire in question, was caused by the criminal and willful act of the plaintiff, with the intent to defraud the insurance companies who had issued policies on this stock of goods. Second—That the plaintiff has been guilty of fraud in the exhibition of his proofs of loss by presenting an intentionally exaggerated statement as to the extent of his loss. As to both these defenses, the defendant has the laboring oar; that is, the defendant has the affirmative on these points, and must make out one or both of them by a satisfactory preponderance of evidence; but the sustaining of either of these

[2] [From 11 Chi. Leg. News, 115.]

propositions or grounds of defense would be sufficient to defeat the plaintiff's claim. The effect of sustaining either of these defenses would be to brand the plaintiff as a deliberate swindler or moral criminal; therefore the proof on these points should be fully satisfactory to your minds.

I had occasion in the trial of an insurance case a few years since, to consider and give to the jury the rule in regard to the kind of proof which was required to sustain this kind of defense, which for convenience I will read to you:

"If the plaintiffs knowingly, and with intent to defraud the defendant and other insurance companies, who had insured their stock of goods, made up a false and exaggerated statement of the amount and value of their stock of goods in store at the time of the fire, and destroyed or damaged thereby, they thereby forfeit all claim against the insurance company.

"In cases of this kind, the plaintiff must come into court with clean hands. The insured is presumed to know better than any one else the value of his property and the amount of his loss, and is bound to make his statement of loss honestly, without any attempt to obtain more than his actual damage; and this rule of law, that thus defeats all claims, unless honestly made, is intended to protect insurance companies from frauds which might otherwise be perpetrated on them. It is a rule which can do an honest man no harm.

"I do not mean, by this, that a person who has sustained loss for which the insurance company is liable, is obliged to state his loss in dollars and cents with arithmetical accuracy, for that, from a variety of circumstances, is frequently impracticable; but he must disclose the whole truth, and nothing but the truth, as nearly as he can come at it at the time by a reasonable and honest effort on his part." Huchberger v. Home Ins. Co. [Case No. 6,821].

The defendant's evidence tends to show by circumstances, that the plaintiff's store was set on fire by the plaintiff, or through his connivance or procurement; and it appears, and is conceded, as one of the elements in this case, that the plaintiff was indicted in Clinton county, Iowa, where this loss occurred, and tried for the incendiary burning of this store, and on that trial, he was acquitted. This acquittal, however, is not to be considered by you as in any light bearing upon the question of the guilt of the plaintiff upon this branch of the case. It is not conclusive, and can cut no figure, and has no weight for the purposes of this trial. There may not have been testimony enough to justify the jury in their estimation in finding the plaintiff guilty of incendiarism, as charged in that indictment. We have not the record before us, and we do not know what the specific charges were; and therefore that trial and acquittal do not weigh as testimony in this case at all, but you must decide this issue upon the evidence which has been given in this case. The defendant has the right to set up this defense, notwithstanding the fact that the plaintiff was not convicted on that indictment.

The circumstantial evidence centers mainly about the tub alleged to have been found in the store, with cotton batting and kerosene in it, on the morning after the fire. The defendant's evidence tends to show that such a tub was found in the store immediately after the fire; and from this fact the defendant insists that the fair presumption is raised that this combination of combustibles was placed there for incendiary purposes, and that the plaintiff must necessarily have been privy to its being there for such purposes. I need not recapitulate in detail the testimony of the defendant in regard to the time when and place where this tub and its contents were found, nor the alleged particulars in regard to the marks it left upon the floor, as this must all be fresh in your recollection.

In answer to this branch of the case, the plaintiff has offered proof tending to show that the tub in question was not seen in the building for some days after the fire—that it was in a restaurant up stairs over the adjoining store at the time of the fire and either fell, or was thrown into the yard, and was either placed in the store by design or accident after the fire, and without the knowledge of the plaintiff, and in furtherance of some design against him.

The first question to be considered by you on this branch of the case is whether, if this tub and contents were found in the store on the morning after the fire, upon the first ingress into the store after the fire was sufficiently extinguished, it furnishes a necessary inference that the plaintiff placed it or caused it to be placed there for incendiary purposes. Second, does the proof offered by the plaintiff overcome or answer this theory? You have listened to the explanation which has been offered by the plaintiff in reference to the question of the finding of this tub, as to whether the tub was actually there, as to whether it could have been there during the fire, as to whether its contents, cotton batting saturated with kerosene, perhaps as inflammable a substance as is known, unless it may be gunpowder, could have remained unconsumed during such a fire. These are questions for you to weigh. The law makes you judges of the weight to be given to all this testimony, not only as to the credibility of the witnesses, but as to the conclusions to be drawn from the circumstances to which they testify. It is for you to say whether this charge of incendiarism has been so far made out. and sustained by the proof as to clearly satisfy your minds of its truth by a satisfactory preponderance of evidence. The testimony on this, as on the other points of the case, is conflicting and contradictory; and it is for you to reconcile it if you can, or if irreconcilable, to say which and how much

of it you will believe. If, from all the proof in the case, you come to the conclusion that the plaintiff did set fire to his store, or caused it to be set on fire, then the plaintiff has no right of action on this policy, and you should find the issue for the defendant, without considering the other elements of the defense.

As to the second ground of defense, the policy in this case contained the following clause:

"All fraud or attempt at fraud, by false swearing or otherwise, shall cause the forfeiture of all claim on this company under this policy."

It hardly needs a judicial interpretation of this clause of the contract to see that if the plaintiff has intentionally made a claim for a loss under this policy of a sum greater than his actual loss, for the purpose of defrauding the defendant thereby, he by such acts forfeits all right to a recovery under the policy. The uncontradicted evidence in the case shows that the plaintiff's books of account, and original bills of purchase, and invoices, were burned in the fire in question. The plaintiff was therefore obliged to resort to secondary evidence to show the amount of his loss; and his testimony tends to show that the method adopted by the plaintiff to arrive at, or ascertain approximately the amount of his loss, was to take the gross amount of his purchases ascertained from his bank account, the amount of cash deposited, as he claims to have sold only for cash, and to add to the cash deposited in bank what he believed or estimated to be a fair statement of his expenses, to take from this sum his average profits, and then deduct the balance from his total purchases, on the assumption that all goods except those which had been sold in the due course of trade, were in the store at the time of the fire, and that the result of these figures would be a very close approximation to the actual loss.

I do not understand that the plaintiff's attorneys claim that this method would give an exact statement of the stock on hand; that perhaps would be impossible. In this statement is a large item for a bill of goods which the plaintiff claims to have bought in November or October, 1875, of one Rockwell, amounting, as is shown, to between six and seven thousand dollars in actual value, but for which the plaintiff claims to have paid $5,000; $1,500 of which was in cash and the balance in mining stock; and the whole controversy on this branch of the case centers around the question whether the plaintiff did, in fact, buy from Rockwell, and place in his store at Clinton, any such bill of goods as is claimed. I say the whole controversy centers about this fact, because there seems to be no dispute as to the amount of goods which the plaintiff bought of other merchants, and of which invoices have been furnished, which when added to the Rockwell bill make up the total of the plaintiff's purchases. Upon this pivotal question the plaintiff has testified to the purchase from Rockwell of six or seven thousand dollars worth of goods in the fall of 1875, which he says he placed in his store, and which formed part of his stock, and he is the only witness who has testified to the direct fact of such purchase. There are some witnesses who testify to facts which it is claimed corroborate and sustain Mr. Sibley on this point, but they seem only to have partially corroborated him. For instance, Mr. Munson states that he knew of four trunks of goods being shipped or sent by rail from Chicago to Clinton by the plaintiff; but Mr. Munson does not know where these goods came from, and there is, therefore, this link out, which you are obliged to fill by the plaintiff's own testimony. He says these goods came from the Rockwell purchase. Mr. Sibley also testifies that his partner, Mr. Chester, was with him at the time of the purchase, and inspected the goods. He tells you that Chester is now in New York, and yet his testimony, as to the amount of this stock purchased, is not offered. The fact that, in a closely controverted question as to the value of this stock of goods, the testimony of a witness is not offered who would seem to have been in a position to throw light upon the transaction, is a circumstance which the jury have a right to consider, and it is for you to say whether it does or does not satisfy your minds that the testimony of this witness, if produced, would not tell against the plaintiff's case, as it is your province to weigh all the circumstances in the case, as well as the direct evidence, and the lack of testimony is frequently as significant a fact as its presence.

To meet this testimony of the plaintiff as to the goods sold by Rockwell, he (Rockwell) has been called as a witness, and he testifies in substance and positively, that he only sold the plaintiff about $70 worth of goods; and his testimony is corroborated to some extent by Skidmore, Boynton and Mrs. Wood, and perhaps others whom I have omitted to mention, who claim to have seen the goods in question, and who testify that Rockwell had only a small remnant of millinery goods, whose value, at the time, could not at the utmost exceed from $100 to $125. There is also testimony from the witness Johnson, who was a clerk for the plaintiff, tending to show that there was a depletion of this stock going on; that goods went irregularly out of the store, and not in the ordinary course of trade. His estimate, also, as to the value of the goods, at the time of the fire, differs widely from the estimate of the plaintiff, and also from the estimate given by the plaintiff's witness, Lewis, who was also a clerk in the store. I may here say that the plaintiff and Lewis estimate the goods variously from $9,000 to $11,000, as in the store at the time of the fire, while Johnson places it only at the outside as between three and four thousand dollars. There has also been a large amount of

testimony introduced tending to impeach the witnesses, Sibley, Rockwell, Johnson and Rowley. The most of this testimony consists of proof tending to show that these witnesses have made on other times and occasions different statements as to the fact than those they have given under oath before you on this trial. The law makes you the judges of the credibility of the witnesses, and the weight to be given to their testimony; and it is for you to say whether any of these witnesses, called by either party, have been so far impeached—their credibility as witnesses so far attacked and broken down—as to justify you in disbelieving their testimony. Upon this point, I read from the instruction given by Mr. Justice Davis to a jury, in the trial of a case somewhat similar to this, a few years since, from the bench of this court:

"The credibility of witnesses is for the jury. The court cannot instruct you whom to believe and whom to disbelieve. There is no artificial rule of belief to control the minds of a jury. Some witnesses, by their appearance on the stand, impress the jury that they are impartial between the parties and tell the truth. Other witnesses who testify show such bias and tell their story in such a way that the mind hesitates to place implicit reliance on what they say. To such witnesses you should apply the best of your common sense. How did they bear themselves on the stand? Was the evidence favorable? Was it consistent with ordinary human conduct? Did they stand the test of cross-examination? Have they been successfully contradicted or impeached? Have they shown malice? These are matters proper to be considered in examining the value of testimony on which the case turns." Huchberger v. Merchants' Fire Ins. Co. [Case No. 6,822.]

If you are satisfied from a consideration of all the proofs, that any witness has sworn falsely in regard to any material fact in this case, then you are at liberty to reject his entire evidence, but you are not obliged to do so, because he may have sworn falsely upon some point, and yet have told the truth upon others; so that you are, after all, to judge as to how much of each witness's testimony you will believe.

So, too, in regard to the question of preponderance of testimony. Mere numbers do not, as a rule, create such preponderance. That is, the jury are at liberty to believe one witness in opposition to several, if there is such coherence and such an air of veracity surrounding his testimony as to satisfy you that he has told you the truth, and that the others have not done so. The very position in which the law places you as judges of the weight of the testimony and the credibility of the witnesses, leaves it for you to say whom and what you will believe, and how much you will believe.

The question, after the consideration of all this mass of contradictory and impeaching testimony, (and it is only for the solution of this question that the proof is admitted) is, did Mr. Sibley purchase from Rockwell this large bill of goods to which he has testified? If you find that he did purchase this six or seven thousand dollars worth of goods, and place them in his store, then I think I do not overstep the province of the court in saying that you should find for the plaintiff on this branch of the case. But if, on the contrary, you are satisfied that Rockwell has told you the truth as to the nature and extent of his dealings with Mr. Sibley, then you must find for the defendant on this issue, because there can be no dispute that Sibley, in his estimates of his loss which he rendered to the insurance company, includes this alleged purchase of six or seven thousand dollars worth of goods from Rockwell, and if he knew that he had made no such purchase, then he must have known that his claim was false and fraudulent, and by such fraud he forfeited his rights under the policy, and your finding should be for the defendant.

As the testimony is voluminous, allow me to suggest that you may abridge your labor by considering these two questions of fact separately; that is, first, was the fire caused by the incendiary act of the plaintiff with intent to defraud? Does the testimony, when all weighed and considered, satisfy your minds by a satisfactory preponderance of proof that the plaintiff caused his store to be set on fire? If you solve that question in favor of the defendant, that will be an end of the case. If, however, you should conclude that the charge of incendiarism is not made out to your satisfaction, then you can take up the last and other branch of the defense; I merely suggest this as you may be able more methodically to marshal the evidence on these two issues by considering them separately.

In performing your duty as jurors, in the settlement of the issues in this case, you should purge your minds of all prejudice against either party, and consider this case fairly as between man and man.

Insurance companies have become a necessity to the business of a civilized community, and the transactions of this country could not be carried on without their agency. They are but an aggregation of the capital of individuals, and the individual stockholders whose money is invested in them, have rights as sacred and as much in your keeping and in the keeping of the court as that of any of the policy holders. The right in any case can harm no man. The business of insurance is peculiar. Insurance companies, from the very nature of their business, are exposed to a variety of frauds and impositions. The character of the business, therefore, justifies the insurance companies in hedging, as I may say, their liability with many precautions and conditions unknown to any other kinds of business. These conditions, however, as interpreted by the courts, do not stand in the way of the recovery of an honest loss The

zeal and suspicion of agents and adjusters may, when there are suspicious circumstances surrounding the loss, give annoyance and produce delay, even in the case of a bona fide loss, which ought to be paid; but this overzeal of agents and employés in other cases (for I do not know that there is any allegation of that kind in this case) ought not to prejudice your minds against the defendant, or against insurance companies in general, so as to prevent your considering their defense when made, with the same fairness as if the defense came from an individual.

If you come to the conclusion that the defense has not been established by the evidence, then it will become your duty to fix the measure of the plaintiff's damages. . It is conceded, or has been, during the trial, that the loss in this case was practically a total one; that is, that there were no remnants saved from the contents of the store that were of any appreciable value, or from which the plaintiff derived any benefit. It is also conceded that there were ten policies of insurance upon this stock of goods, making a total of insurance of $10,000. The proofs of loss submitted by the plaintiff, and as finally amended by him, amount to a total of $9,578.76, for which the defendant is liable for one-tenth, with interest at the rate of six per cent. per annum from 60 days after the final proofs of loss were rendered, which was on the 12th day of July, 1876.

[If you find for the defendant it will not be necessary for you to make any computation as to that. The form of your verdict will be: "We, the jury, find the issue for the plaintiff, and fix the damages at" so much which will be the amount arrived at by the rule I have given you. If, on the contrary, you find that the defense has been established, or either of the defenses, then the form of your verdict will be: "We, the jury, find the issues for the defendant."] [8]

Verdict for plaintiff, for $567.50.
The verdict in this case was subsequently set aside and a new trial granted; and the suit was afterwards dismissed by plaintiff.

NOTE. The fraud and false swearing, in order to defeat a recovery, must have been intentional, with respect to a material matter and with the purpose to defraud and deceive the insurer. Marion v. Great Republic Ins. Co., 35 Mo. 148; Moadinger v. Mechanics' Fire Ins. Co., 2 Hall (N. Y. Super. Ct.) 490; Commercial Ins. Co. v. Huckberger, 52 Ill. 464; McMaster v. President, etc., of Insurance Co. of North America, 55 N. Y. 222; Maher v. Hibernia Ins. Co., 67 N. Y. 283; Franklin Fire Ins. Co. v. Updegraff, 43 Pa. St. 350; Insurance Companies v. Weides, 14 Wall. [81 U. S.] 375; Dogge v. Northwestern Nat. Ins. Co., 49 Wis. 501. 5 N. W. 889.
A discrepancy between the value of the goods destroyed by the fire as sworn to by the insured, and the value as proven on the trial in a suit against the company, is not necessarily evidence of fraud. Beck v. Germania Ins. Co., 23 La. Ann. 510; Clark v. Phœnix Ins. Co., 36 Cal. 168; Franklin Ins. Co. v. Culver, 6 Ind. 137;

Moore v. Protection Ins. Co., 29 Me. 97; Rockford Ins. Co. v. Nelson, 75 Ill. 548.
If payment of the loss be obtained by means of fraudulent proofs, the money may be recovered back. Hartford Live Stock Ins. Co. v. Matthews, 102 Mass. 221; Northwestern Life Ins. Co. v. Elliott [5 Fed. 225]; McConnel v. Delaware Mut. Safety Ins. Co., 18 Ill. 228.