DREIER *v.* CONTINENTAL LIFE INS. CO. OF HARTFORD, CONN.[1]

*(Circuit Court, D. Indiana. August 14, 1885.)*

1. LIFE INSURANCE — FALSE ANSWERS AS TO PREVIOUS DISEASE — APPLICATION, HOW CONSTRUED.

To the questions in an application for insurance whether the applicant had "ever had any of the following *complaints:* * * * Pneumonia, * * * spitting or raising of blood, * * * or any disease of the lungs," the answer was, "No;" and to the question, "What sickness or sicknesses has the party had during the 10 years last past?" the answer was, "None except fever—cure perfect:" and to the question, "Is the party now in good health?" the answer was, "Yes." *Held*, that the answers were true, within the meaning of the contract, although the insured had on one occasion "spit blood;" the evidence showing that he had not had the spitting in such form as to be called a disease, disorder, or constitutional vice; and that the question did not require him to state every instance of blood-spitting, but only such as amounted to a disease.

2. SAME — EVIDENCE — STATEMENTS OF PHYSICIANS IN PROOF OF DEATH PRIVILEGED.

Statements in the proof of death, made by the physician of the insured, as to the previous complaints and ailments of the insured, are privileged communications within the meaning of the Indiana statute, and not admissible to show that the answers made to certain questions in the application for insurance were false.

At Law.

---

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

*U. J. Hammond* and *John S. Tarkington,* for plaintiff.

*Finch & Finch,* for defendant.

WOODS, J.   Action upon an insurance policy upon the life of Peter H. I. Dreier, taken for the benefit of his wife, the plaintiff.   By the terms of the policy the application for the insurance was made a part of the instrument, and the answers to questions are explicitly warranted to be true.   The defense specially pleaded to the action is that certain of the answers to questions in the application were false; that to the inquiry, "Has the party had any of the following complaints:   *   *   *   (16) Pneumonia,   *   *   *   spitting or raising of blood, (20) any disease of the lungs," the answer was, "No;" and that to the question, "What sickness or sicknesses has the party had during the ten years last past?" the answer was, "None, except fever—cure perfect;" and to the question, "Is the party now in good health, and does he usually enjoy good health?" the answer was, "Yes;" that these answers were all, and each severally, false and a breach of warranty in this: that the insured had been afflicted with pneumonia and had had spitting and raising of blood prior to the date of the policy and had been afflicted with disease of the lungs.   This answer, in so far as it is well pleaded, casts upon the plaintiff the burden of proving the truth of the answers and warranties in question.   *Continental Life Ins. Co.* v. *Kessler,* 84 Ind. 310.

It seems to be an established rule that "the application for insurance must be construed strictly against the insurer."   The supreme court of Indiana so declared in effect in *Pennsylvania Mut. Life Ins. Co.* v. *Wiler,* at November term, 1884, reported in Insurance Law Journal for May, 1885.   By this rule, as indeed by the terms of the question on the subject, there is no warranty in this case that the insured never had spitting or raising of blood, but only that he had not had the *complaint* of spitting or raising blood; equivalent to a warranty that he had not had blood-spitting in such form as to be called a disease, disorder, or constitutional vice.   See *Connecticut Mut. Life Ins. Co.* v. *Union Trust Co.* (U. S. Sup. Ct.) Amer. Law Reg. January, 1885; S. C. 5 Sup. Ct. Rep. 119.

The answer pleaded, it may be observed, does not allege the existence of any such disease or disorder, and therefore really presents no issue upon this point.   But we will consider the case as if the issue were made.   If the question put to the applicant for the insurance had been whether or not he had had any spitting of blood, or had had any symptom of disease, such as spitting or raising of blood, it would doubtless have required the disclosure of a single instance of blood-spitting.   *Geach* v. *Ingall,* 14 Mees. & W. 95; S. C. Bigelow, Life & Acc. Ins. R. 306; *Insurance Co.* v. *Miller,* 39 Ind. 475; and *Vose* v. *Eagle Life Ins. Co.* 6 Cush. 42, are cases which illustrate the distinction, and are in this respect different from the case now presented.   See, also, *Cushman* v. *Insurance Co.* 70 N. Y. 72, and authorities cited.

The inquiry now is not whether or not there was a misrepresentation or a false warranty in respect to a symptom of disease, but whether or not the party had actually had the disease, the warranty being that he had not; and consequently the single instance of blood-raising proved has significance only as an item of evidence tending to show the presence, but not itself constituting the fact, of disease or disorder. The weight which this evidence should have depends, of course, largely upon the circumstances of the occurrence, and of other pertinent evidence, if there be any competent to be considered. There is no other evidence relevant to this point and favorable to the defense, except certain statements made by Dr. Hadley, physician of the deceased, contained in the proof of death furnished by the plaintiff to the defendant company; and these statements, it is now insisted, come within the rule of privileged communications between patient and physician, and therefore cannot be considered. The court is inclined to this view. It is clear that Dr. Hadley could not, against the will of the plaintiff, if called as a witness, have been allowed to testify to the facts contained in these statements. *Pennsylvania Mut. Life Ins. Co.* v. *Wiler, supra; Masonic Mut. Benefit Ass'n* v. *Beck,* 77 Ind. 208; *Connecticut Mut. Life Ins. Co.* v. *Union Trust Co., supra.*

It is true that by the terms of the policy the plaintiff, in order to have a right of action, was bound to furnish the company within a specified time "satisfactory proof of the death;" but this did not entitle the company to go further, as it seems to have done, and require of the plaintiff a statement by the physician of his knowledge concerning the previous complaints and ailments of the deceased, which, proximately at least, did not cause the death; and I see no reason at all why such statements, when so obtained, should become available to the company as evidence, in a suit upon the policy, of facts which could not be shown by the testimony of the one who made the statement. The law which declares communications between patient and physician confidential should not be evaded in any such way.

These statements excluded, the only evidence that remains to show that the deceased had, or had had, any disorder or complaint when he applied for the insurance, consists in the fact that four years before he raised blood on one occasion. The evidence shows that the deceased was a blacksmith, and had been of strong and robust appearance, and so continued until some months after the policy sued on was issued. The defendant's examining physician,—a specialist of noted skill in respect to diseases of the throat and lungs,—after a careful examination declared him sound, and to be "A No. 1 risk." Upon the particular occasion of blood-spitting in question he had been employed for some hours during a hot summer afternoon in heating and setting wagon-tires, and, in a heated condition, had drank freely of cold water. He at once felt ill, went home, took supper, and was about to retire, when he remarked that there was "something salt" in his mouth, and thereupon two or three times spat out small quan-

tities of blood, which he afterwards said came from his lungs. He went to consult his physician, and within a few days went to Wisconsin, where he stayed about two months, and then returned home well, and continued, as before stated, in apparent good health until and for some months after the policy of insurance upon his life was issued. It is not questioned that he died of *phthisis pulmonalis.* The plaintiff testified that he was taken sick with a cold in September, and died on the twenty-fourth of November following, the cause of the death, as she understood, being quick consumption.

In the opinion of the court, it cannot be said to appear upon the competent evidence in the case that the deceased made false answers to questions in the particulars charged, or in any respect which constitutes a breach of any warranty contained in the policy and application. The attendant circumstances, corroborated by subsequent long-continued health and by the medical examiner's report, strongly indicate a transient rather than settled cause for the single instance of blood-spitting shown to have occurred, and there remains in the case no evidence to justify a different conclusion. The expert testimony in the case was predicated upon hypotheses which are not supported by proof.

The plaintiff is entitled to recover the amount of the policy, with interest for two years and three months,—amounting in the aggregate to $1,135,—with costs of suit. Ordered accordingly.

---

(September 10, 1885.)

Upon Motion for New Trial.

Woods, J.   It is insisted that the court erred in admitting in evidence the certificate of the examining physician, and in excluding from consideration the statements of Dr. Hadley in respect to diseases which the deceased had had before his last sickness. Upon the last point reference is made to *Insurance Co.* v. *Newton,* 22 Wall. 32; *Walther* v. *Mutual Life Ins. Co.* (Cal. Sup. Ct.) 13 Ins. Law J. 815; S. C. 4 Pac. Rep. 413; *Campbell* v. *Charter Oak, etc., Co.* 10 Allen, 213; *Moore* v. *Protection Ins. Co.* 29 Me. 97.   These cases declare the general proposition that "the preliminary proofs presented to an insurance company in compliance with the condition of its policy of insurance are admissible as *prima facie* evidence against the assured;" but no one of them goes to the extent, either in terms or, as I conceive, in principle, of holding that statements by physicians which are by statute made confidential become available to the company as evidence because found in or connected with the preliminary proofs; especially when, as in this case, the statements in question are not concerning the last sickness or proximate cause of death.

In the opinion in *Masonic Mut. Ben. Ass'n* v. *Beck, supra,* it is conceded or implied that after the death of the patient the physician

v.24f,no.12—43

may testify at the instance or with the consent of "the party who may be said to stand in the place of the deceased;" but this was aside or beyond the question presented in that case. And there are explicit authorities to the effect that the restriction of the statute can be waived only by the one who makes the confidential communication. *Westover* v. *Ætna Life Ins. Co.* (N. Y. Ct. App.) 1 N. E. Rep. 104; *Pierson* v. *People,* 79 N. Y. 424; *Grattan* v. *Metropolitan Life Ins. Co.* 80 N. Y. 281; *Bowman* v. *Norton,* 5 Car. & P. 177; 1 Greenl. Ev. § 243.

It need not, however, be decided in this case whether or not the plaintiff might have waived the restriction. It is enough to say that, by including the statements in question in the preliminary proofs, she did not consent that they might be used in evidence against her in an action upon the policy of insurance.