## NEW YORK LIFE INS. CO. v. HUNTER.

Circuit Court of Appeals, Eighth Circuit.
April 22, 1929.

No. 8277.

174

G. B. Rose, D. H. Cantrell, J. F. Loughborough, A. W. Dobyns, and A. F. House, all of Little Rock, Ark., for appellant.

Edward B. Downie and Elmer Schoggen, both of Little Rock, Ark., for appellee.

Before STONE, LEWIS, and COTTERAL, Circuit Judges.

COTTERAL, Circuit Judge. The New York Life Insurance Company appeals from a judgment upon a verdict of a jury in favor of Clara M. Hunter, as the beneficiary in a policy of insurance applied for by her husband in February, 1927, and delivered to him in the following May. The company resisted liability on the ground that the policy was induced by misrepresentations of the assured in his application for the insurance, wherein concededly he declared in answer to certain questions of the medical examiners of the company that the answers were written by him, were full, complete, and true, and he agreed the company "believing them to be true shall rely and act upon them." He answered, "No," to the questions whether he (1) had ever raised or spat blood, (2) had ever taken morphine, cocaine, or other habit-forming drugs, and (3) had consulted a physician for certain named or other diseases; and he answered, "None," to a question as to the names of the physicians he consulted or by whom he had been examined or treated within the past five years.

The evidence shows without dispute that each of the foregoing answers was untrue in fact. It is claimed for the plaintiff that the controversy arising upon the evidence was not whether they were literally correct, but whether they were given honestly and in good faith or otherwise, and it was properly submitted to the jury, upon the authority of Moulor v. American Life Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447, and other cases following the like principles. For the company, the contention is the answers were material and untrue to the knowledge of the assured thereby invalidating the policy, as ruled in Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202, and in other cases wherein the representations were compared with the facts involved, wherefore, the trial court erred in refusing to direct a verdict for the company and in giving and refusing other instructions to the jury. A general instruction was given at the outset in accordance with the Hilton-Green Case, but it was qualified by special instructions which authorized the jury to return a verdict for the plaintiff if certain facts were found in her favor. If the latter instructions were erroneous, the prejudice was not removed by the former instruction. Armour & Co. v. Russell (C. C. A.) 144 F. 614, 6 L. R. A. (N. S.) 602.

We consider first the undisputed evidence bearing upon the answer that the assured had not raised nor spat blood. This had occurred for some years, he complained of this trouble and others to Dr. Norris, said he had been spitting blood and had then just spat up a big mouthful, and the doctor recommended he consult a specialist. The plaintiff testified this had occurred probably once a

week at home for five or six years, but assured did not tell her as to its frequency during the day, she had not noticed it for a year prior to his death, he had pyorrhea but she did not know this was the cause, he had his tonsils removed in 1919, his general health at the date of the application was good, nothing was apparently wrong with him before July 1, 1927, when he became ill, and on July 20, 1927, he went to a hospital, with a dropsical condition, dying there on September 16, 1927. His death was due to cancer of the biliary system. Dr. Bledsoe testified that in a case of pyorrhea blood might accumulate from the gums in the mouth and throat. At the hospital, the personal history given by the assured showed in part: "For several years has often sudden occurrence of blood in throat, source unknown."

■■ The jury was instructed that if the assured spat blood occasionally without realizing it was caused from the throat, lungs, or stomach, the fact would not be a failure to correctly answer the question, and it was necessary he recognized and knew it was the result of disease and not some temporary injury or infection of the mouth. This we hold was error, as the assured must have known the blood spitting was not trivial or temporary, and a finding it was so or did not have a deeper source than his mouth would be without any substantial support in the evidence. Again, the inquiry was not concerning a disease so that the jury might pass upon the issue of his honesty and good faith in the expression of his belief or judgment. It was as to a concrete symptom that had been prolonged and recurrent and was clearly of that seriousness that whatever the cause the company was entitled to be advised of it for the purpose of investigating it and deciding upon the consequent risk. New York Life Ins. Co. v. McCarthy (C. C. A.) 22 F.(2d) 241, 244; Mutual Life Ins. Co. of New York v. Hurni Packing Co. (C. C. A.) 260 F. 641; Dreier v. Continental Life Ins. Co. (C. C.) 24 F. 670; 14 R. C. L. p. 1073. The answer of the assured was material and was shown by the undisputed evidence to be untrue to his knowledge. In any event, the verdict could not be sustained in the exercise of a sound judicial discretion. For these reasons, the foregoing instruction should not have been given, the request of the company for a peremptory verdict should have been granted, and it was error to refuse it. A. B. Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597.

■■ The next representation in order was the negative answer to the question whether the assured had taken habit-forming drugs. The evidence is undisputed that paregoric was a drug of that character, containing alcohol and opium, that the assured obtained it from his family physician and made a practice of buying it from druggists for years, twice until refused by them, that sometimes he was found awaiting in the early morning for a drug store to open, that as late as February, 1927 (the month of the application), up to the twentieth day he bought the drug frequently, that he continued buying it up to July 30, 1927, when he went to the hospital, and thereafter, some twenty days before his death, he bought another bottle. Mrs. Hunter testified she had known him to take paregoric, but only in a small amount.

The trial court charged the jury that unless the assured knew paregoric was such a drug his statement would not avoid the policy, that it was necessary for him to know this, and that he was expected to disclose the information. The instruction seems justified, as there was a controversy in the evidence whether he took the drug because addicted to it and therefore knew it was habit-forming in character, or as a means of relief for his affliction, although it was claimed by Mrs. Hunter he was in health up to July 1, 1927. We therefore hold the complaint of this instruction is not sustained, and that it was not error to refuse a peremptory instruction upon the answer here involved.

■ The further representation was that the assured had not consulted or been examined or treated by a physician. In this matter the evidence is again undisputed. He went to Dr. Norris, his family physician, with complaints of cramping in the stomach, diarrhea, and occasional blood spitting. The doctor commenced treating him as early as 1921 continuing up to June, 1926, giving him bismuth compound, paregoric, and other remedies, either doing this himself or sending him to a drug store. He found the assured's stomach and bowels in a puffy condition, his bowels bloated and distended, and his liver hard or enlarged. His condition was serious because continuing. As stated, the doctor recommended consultation with a specialist. The doctor wrote a few prescriptions for him, but without charge, according to a custom in small towns. The treatments were given as a matter of friendship and they were described as casual in not being made on thorough examination. In September, 1926, when the assured visited a hospital where his wife was employed, he met Dr. Cummins, who on request gave him medicine three times, probably for constipation, making no charge.

The assured's personal history at the hospital also disclosed: "Chronic diarrhea for several years, occurring with cramping pains in abdomen. For 4 or 5 years had temporary areas of local anesthesia."

The trial court instructed the jury the word "Consulted" did not apply to irregular consultations concerning temporary illness, but would cover any regular, systematic visits; in other words, if he only took some temporary remedy, casually consulted a man who was a physician and friend, that would not be consultation under the policy, but if he had some disease, went to a doctor, talked to him about it, and the doctor gave him a prescription or advised him what to do for relief, the fact of nonpayment therefor did not relieve of the duty to disclose the consultation. We do not consider whether this was error, in the absence of an exception. But this was a material answer, and the company was entitled to a fair and full disclosure of the repeated consultations and treatment for substantial affliction. Instead, the fact was denied, and the answer was shown by the undisputed evidence to be untrue to the knowledge of the assured. It was error to refuse to direct a verdict for the company. Mutual Life Ins. Co. of New York v. Hurni Packing Co. (C. C. A.) 260 F. 641; New York Life Ins. Co. v. McCarthy (C. C. A.) 22 F.(2d) 241.

The exceptions to the refusal of instructions tendered by the company are not reviewed as a ruling upon them is not required. Also, the objections assigned to the admission of testimony are not noticed because unnecessary to the result.

The judgment appealed from is reversed, and the cause is remanded to the District Court, with direction to grant a new trial.