HARTFORD LIVE STOCK INSURANCE COMPANY *vs.* ASA K. MAT·THEWS & another.

Under the Gen. Sts. *c.* 58, §§ 72, 74, insurance made in this Commonwealth by a forei₄ a insurance company without complying with the requisitions of that chapter is valid, *t* - though made through an agent who is not a general agent under § 68.

In an action to recover the amount of a loss paid on a policy of insurance, upon the grou₁ 1 of false and fraudulent representations of the defendants which formed part of the pro₁ f that induced the payment, it is sufficient to entitle the plaintiffs to recover, if they so 1. *t* relied on these representations that but for them they would not have made the payme₁ .

In an action for deceit, the defendant has good ground of exception if the judge at t1 ə trial submits the case to the jury under instructions which permit them to find for t1 e plaintiff without finding that the defendant knew the falsity of the untruth which is t ə basis of the action.

TORT by a live stock insurance company, to recover fro₁ ₁ Matthews and Bela Coomes $396 alleged to have been paid t ɔ Matthews by the plaintiffs under a policy which they had issuè ₁ to him on the life of a horse, and relying in making the paymer t on false and fraudulent representations concerning the healt.₁ and value of the horse, made to them by the defendants wi₁h intent to cheat and defraud.

At the trial in the superior court, before *Vose,* J., there wɛs evidence that the plaintiffs were incorporated under the laws of Connecticut, and it was not disputed that they were a foreign insurance company. There was also testimony that on Octo ber 18, 1866, they were not restricted, by their charter or other wise, from incurring any greater hazard in one risk than on₁ tenth of their unimpaired capital; and there was no evidence whether or not they had in writing appointed a citizen and resi·

dent of Massachusetts general agent. See Gen. Sts. *c.* 58 §§ 66, 68.

It appeared in evidence that the contract for the insurance on the horse was made by Matthews at Springfield, with Joram Porter, an agent of the plaintiffs there residing, and the policy was issued October 18, 1866 ; and that the horse at the time of the insurance was in Longmeadow, where Matthews lived. The false representations relied on by the plaintiffs were contained in the application made by Matthews for the insurance, representing that he was the sole owner of the horse, and that it was sound and was worth $600 ; and also in a proof of loss, sworn to by him on June 28, 1867, making the same representations, further representing that the horse had died without fault on his part, and accompanied by an affidavit of James K. Coomes and the defendant Bela Coomes to the same effect.

Matthews testified that he took this proof of loss to Porter ; and that Porter, on learning that Bela Coomes was the father in law of Matthews, said that another affidavit must be furnished, whereupon on June 29 he furnished an affidavit made by John Smith and Tobias Almquist. There was evidence tending to show that the plaintiffs had this second affidavit, as well as the affidavits of Matthews and James K. and Bela Coomes, when they paid the loss ; and their vice-president testified that, if they had it then, they must have paid the loss by reason of the whole proof, that it was of itself .sufficient proof for the payment, and that the plaintiffs would ordinarily pay a loss on such proof. But they also introduced evidence tending to show " that all the aforesaid representations relied on by them were false, and that they were thereby induced to part with their money."

The plaintiffs introduced evidence tending to show the unsoundness to consist in the horse being wind-broken. The defendants introduced evidence tending to show that it was not wind-broken ; that the only difficulty was that it whistled ; that it was capable of service and use ; that its value was unim paired thereby ; and also that its value was as much as $600. The plaintiffs introduced evidence tending to contradict this.

The amount for which the horse was insured was $400. The horse died from typhoid fever, and there was no evidence that the death was attributable in any way to said claimed unsoundness. Matthews further testified that he saw that something was the matter with the horse, the second time he drove it; that it made a little noise, but the noise did not increase up to the time of the death; and that he did not think that the horse was wind-broken.

" The defendants asked the judge to rule, that the plaintiffs could not recover, because it appeared that the insurance was effected and the contract made in violation of the Gen. Sts. *c.* 58, § 66. But for the purposes of the trial the judge instructed the jury that there were no facts disclosed which would prevent the plaintiffs from maintaining the action in consequence of any such violation of the General Statutes.

" The defendants also asked for instructions, that the plaintiffs must prove not only that the representations relied on were untrue, and that the company were thereby induced to part with their money, but that each defendant knew that the representations by him made were untrue ; that, if the company paid the money on said loss not wholly on the strength of the proof of loss offered by Matthews with the affidavit of James K. Coomes and Bela Coomes, but a subsequent affidavit was made by other parties, and upon the inducement and strength and by reason of both affidavits the money was paid, then the plaintiffs could not recover; that, if the company would not have paid the money but for the last affidavit, the plaintiffs could not recover; that, if Matthews believed that the horse was worth $600, though unsound, he was not liable; and that, if Matthews knew that the horse whistled, but did not know or believe that it made the horse unsound, the action could not be maintained against him for false representations as to soundness, because of said whistling.

" The judge refused to give any of the above rulings, and instructed the jury as follows: If these defendants, or either of them, signed these written statements, knowing that they were to be used to induce the plaintiffs to pay Matthews the insur-

ance on the horse, and signed them intending to induce the plaintiffs thereby to pay the money, and the plaintiffs were induced by these statements to make the payment, and the statements were untrue, the defendants are liable, although they may not have read or had read to them the statements so signed, and may not have known the contents of the statements; and they would be so liable, although the plaintiffs did not rely entirely on these statements, but were partly induced by other statements or proofs to make the payment. If the plaintiffs so far relied on these statements, that they would not have paid the money had it not been for these statements, the defendants would in law be responsible. Also, that, although the horse may have been worth $600 at the time of his death, yet, if the plaintiffs were induced to pay the money by the false statements contained in the papers signed by the defendants, they are entitled to recover the money so paid.

" The judge submitted to the jury the special question of the value of the horse, in addition to the general verdict. The jury found for the plaintiffs as to Matthews, and disagreed as to Coomes; and found also that the value of the horse was $100; and Matthews alleged exceptions."

*G. M. Stearns*, ( *C. A. Winchester* with him,) for Matthews.

*N. A. Leonard*, ( *G. Wells* with him,) for the plaintiffs.

AMES, J. The failure, on the part of the plaintiff corporation, to comply with the requisitions of the fifty-eighth chapter of the General Statutes, does not have the effect to render invalid their contract of insurance, or make it illegal in such a sense as to deprive them of its benefits. The seventy-second section of that chapter so provides in express terms. It is contended, on the part of the defendants, that the benefit of this saving clause in the statute is to be restricted to such foreign insurance companies as shall have acquired the right to do business in this state, by the appointment of a general agent according to the terms of § 68. But we can see no foundation for this distinction. It is true that it is expressly declared in that section that no such company shall do business in this state until it shall have made such an appointment; and § 72, which provides that the con-

tract of insurance, though not in conformity with the statute, shall nevertheless be valid, also provides that the agent making the insurance shall be liable to the penalty provided in § 74. But this last mentioned section is not to be restricted in its application to the "general agent" of any such company, duly appointed as such. The language of the section is, that "no person shall act as agent of an insurance company not incorporated in this state, until he has complied," &c., under penalty of a fine. As such a company however is incapable of acting at all except by some agent, we must interpret the statute as having application not only to such agents as perform their functions under some formal and general appointment, but also to such as may be employed only occasionally or in single transactions. *Provincial Insurance Co.* v. *Lapsley,* 15 Gray, 262. *National Insurance Co.* v. *Purcell,* 10 Allen, 231. It was therefore correctly ruled at the trial, that, so far as any violation of the Gen. Sts. *c.* 58, may be charged, no facts were disclosed which would prevent the plaintiffs from maintaining this action.

It was correctly ruled that the defendants might be held liable even though the plaintiffs did not rely exclusively upon their statements, but were partly induced by other statements or proofs to make the payment. It is sufficient, upon this point, "if," in the language of the presiding judge, "the plaintiffs so far relied on these statements (of the defendants) that they would not have paid the money had it not been for these statements." If the representations of the defendants were calculated and intended to induce the plaintiffs to alter their condition by parting with their money, and had that effect, it would be immaterial that other representations and influences were also brought to bear, which may have had a tendency towards the same general result. *Edwards* v. *Marcy,* 2 Allen, 486.

In one point, however, there appears to have been a material oversight in the instructions given to the jury. It was fully and correctly explained to them, that, in order to be entitled to re-cover, the plaintiffs were bound to show that the defendants, or one of them, signed the written statements, knowing that they were to be used to induce the plaintiffs to pay the insurance on

the horse, and intending that they should be so used; that the plaintiffs were thereby induced to make the payment; and that the statements were untrue. It is also correct to say that any suggestion on the part of the defendants that they subscribed and made oath to the truth of these statements without reading them or taking the trouble to inform themselves of their contents, would be of no avail as a defence to this action. But it does not appear by the bill of exceptions (which, even though it may be defectively or imperfectly expressed, must in this respect be our guide) that the jury were also instructed that the plaintiffs, in order to recover, must go one step further, and prove that the defendants knew their statements to be false. This is an action for a deceit, and the requisites for supporting such an action are " the telling of an untruth, knowing it to be an untruth, with intent to induce a man to alter his condition, and his altering his condition in consequence, whereby he sustains damage." See *Brown* v. *Castles*, 11 Cush. 348, and cases there cited. The *scienter* is a material and vital element in the case, necessary to be alleged in the declaration and proved at the trial. *King* v. *Eagle Mills*, 10 Allen, 548. *Pearson* v. *Howe*, 1 Allen, 207. For aught that appears in the report, the jury may have acted under the impression that the plaintiffs were not required to prove either that the defendants knew the representations to be false, or that they made those representations to another's prejudice without any knowledge or information or any grounds for expressing their belief. We do not see that the plaintiffs were required, under the instructions actually given, to prove either of these two things; and they may therefore have obtained their verdict, although there was a complete failure on their part as to one essential element of their case. Upon this point, therefore, the *Exceptions must be sustained.*