## REUBEN SPAULDING *vs.* WILLIAM S. KNIGHT.

Worcester.    October 1. — 22, 1874.    COLT & MORTON, JJ., absent.

In an action to recover damages for the conspiracy of the defendant and A. in inducing the plaintiff to take a forged note as collateral security for a loan to A., who had also given certain due bills as security, evidence is inadmissible, for the purpose of proving the validity of the due bills, that a third person had lent money to A. and had received the same due bills as security, and still retained similar due bills therefor.

If B. conspires with A. to defraud C. by inducing the latter to loan money to A., upon the security of a forged note, the fact that C. in making the loan also relied upon other securities and upon verbal representations made by B. of the ability of A. to repay the loan, will not prevent his recovering against B. in an action for the conspiracy, if C. also relied upon the forged note.

It is no defence to an action for conspiring to obtain money by false pretences that the person so obtaining the money intended to repay it.

In an action to recover damages for the conspiracy of the defendant in inducing the plaintiff to take a forged note as collateral security for a loan to A. it was admitted that the note was forged, and that the defendant said to the plaintiff that he knew nothing about it or the maker of it. The defendant requested an instruction that if he made a false representation as to the note, and had reasonable cause to believe that it was forged, yet if he did not absolutely know that the note was forged or that his representations were false, he was entitled to a verdict. *Held,* that this request was rightly refused.

The value of land conveyed by A. to C. cannot be shown by the recita. of the consideration in an unaccepted deed of adjacent land, from A. to C., or by evidence of the value of other land in the same range and county.

TORT. The first count alleged in substance that the defendant contriving and intending to cheat and defraud the plaintiff, fraudulently and unlawfully conspired and confederated with Samuer

K. Elliott to injure, cheat and defraud the plaintiff by passing to him as collateral security for a loan of money, a false, fraudulent, forged and fictitious promissory note of a certain tenor [setting it forth]; that Elliott delivered the note to the plaintiff, representing it to be a good and valid note, although the defendant and Elliott well knew it to be false, forged, fictitious and of no value; that the plaintiff relying upon said statement, and believing the note to be a valid security, delivered to Elliott a large sum of money and a promissory note payable to the defendant's order, and the defendant and Elliott shared the money and note between themselves, and the plaintiff was cheated, injured and defrauded.

The second count alleged that the defendant, with intent to defraud the plaintiff, unlawfully and fraudulently conspired with said Elliott to injure, cheat and defraud the plaintiff by means of a certain false, forged and fraudulent promissory note of the tenor set forth in the first count; that the defendant and Elliott pretended to the plaintiff that Elliott wished to borrow of the plaintiff a large sum of money, and would furnish ample security for such loan, and the plaintiff believing and trusting to said pretences agreed to loan to Elliott said money upon good collateral security, and Elliott thereupon made, forged and counterfeited the said note for the purpose of passing the same to the plaintiff as security for said pretended loan, and Elliott and the defendant falsely represented to the plaintiff that the note was a good and valid security, well knowing the same to be false, fraudulent and counterfeited, and of no value; that the plaintiff, believing the note to be valid, and trusting to and relying upon the said false and fraudulent representations, the defendant then and there intending that the plaintiff should so trust and rely upon said representations, did loan and deliver to Elliott a large sum of money and a promissory note signed by the defendant, and received as collateral security therefor said false, fraudulent and counterfeited promissory note; that the plaintiff by the premises was defrauded and injured.

There were also two counts for false representations, and one in trover. Trial in the Superior Court, before *Allen*, J., who after a verdict for the plaintiff allowed a bill of exceptions, in substance as follows:

There was evidence tending to show a combination and con-
spiracy between the defendant and Elliott as alleged in the first
and second counts. The defendant, a broker, introduced evidence
tending to show that the plaintiff took as security for a loan of
eight hundred dollars to Elliott, due bills of the Weed Sewing
Machine Company of the apparent value of seven hundred and
seventy dollars from Elliott, who gave his note payable to the
plaintiff in thirty days for the loan ; that after the loan was made
and the transaction fully completed, the plaintiff applied to Elliott
for additional security for his loan and received therefor a promis-
sory note purporting to be signed by one John Ward. It was ad-
mitted in evidence that the plaintiff retained the said due bills as
security for said loan and had them in his possession at the time
of the trial but refused to produce them upon the defendant's
request, to be used in evidence. To show the validity of said due
bills as security for said loan the defendant offered to show that
one Sibley had loaned money to Elliott, taking the same due bills
as security therefor, and that at the time of said loan by the
plaintiff part of said due bills were held by Sibley as security for
loans, but this evidence was rejected by the court.

The plaintiff introduced evidence tending to show that the de-
fendant, who was a broker, made certain verbal representations
to the plaintiff concerning the conduct, character, credit, ability
and dealings of Elliott to enable Elliott to obtain the loan from
the plaintiff, to wit : that Elliott owned western lands, was largely
engaged in the sale of sewing machines, and had always promptly
paid loans ; that the defendant and Sibley had loaned him money ;
that Elliott had purchased real estate of one Buttrick ; that he
was desirous of borrowing $800 from the plaintiff, and would fur-
nish ample security ; and that the defendant considered Elliott
had ample means and was good. The plaintiff testified that he
relied upon Elliott's ability as represented by the defendant in
making the loan ; that he believed the due bills to be good when
he received them as security for his loan, and agreed to make the
loan to Elliott upon these representations of the defendant to
him.

The defendant requested the court to rule that if the plaintiff
relied upon the verbal representations of the defendant, and by
reason of said representations agreed to loan and did loan the

alleged amount, the action could not be maintained, but the request so to rule was refused as wholly immaterial.

Elliott, who was a witness for the plaintiff, testified that the defendant agreed to assist him to take up his note to the plaintiff when it became due and that he intended to pay it, and there was also evidence tending to show that the defendant intended the note should be paid when due.

The defendant requested the court to rule that if the jury believed that the defendant intended that Elliott's note to the plaintiff should be paid when due they must find for the defendant, although the defendant and Elliott combined together to obtain the alleged loan, but the presiding judge declined so to rule.

The evidence was conflicting as to whether or not the Ward note passed to the plaintiff at the time of the delivery of the money loaned by the plaintiff to Elliott, or was taken by the plaintiff as additional security after the loan was made. It was admitted that the Ward note was forged by Elliott, and the evidence was conflicting as to whether the defendant knew said note to be a forgery ; and it was also admitted that the defendant represented to the plaintiff that he knew nothing about the forged note or John Ward, the apparent maker of the same, which was the only representation as to the forged note sought to be proved against the defendant.

The defendant requested the court to rule that if the jury are satisfied that the defendant made false representations to the plaintiff concerning his knowledge of the Ward note and that the defendant was so situated at the time said note was made and passed to the plaintiff as to have had reasonable cause to believe said note was forged, and that the representations made by him to the plaintiff were false, yet if he did not absolutely know such note was forged or such representations false when made, the jury should find for the defendant ; but this request was not granted.

There was also evidence tending to show that the plaintiff had received a large amount of western land from Elliott in payment of said loan, since the date of the writ. The defendant put in evidence a certain receipt showing the amount of money to be paid by the plaintiff to Elliott for certain western land, the deed of which was sent to the plaintiff with the receipt, which receipt was admitted in evidence. The defendant then offered as evi

dence to prove the value of the lands received by the plaintiff and the responsibility of Elliott, the proof of certain deeds sent by express to the plaintiff by Elliott's agent, which deeds were found in the express office directed to the plaintiff, two of which deeds were of previous sales between the parties owning the land prior to the conveyance to the plaintiff and one of which was to the plaintiff. In the deed to the plaintiff the name of the grantee was left in blank, but the deed was intended for the plaintiff in the same manner as other deeds which the plaintiff admitted he had in his possession from Elliott; but said deed to the plaintiff had not been delivered and he had returned it to the express office unaccepted, and the plaintiff testified that he refused to accept it. In said deeds similar western lands adjacent to the lands already received by the plaintiff were described and the considerations named; but proof of the deeds was rejected. The defendant also offered to prove what lands in the same range and county as those purchased by the plaintiff of Elliott were worth, which was refused. The plaintiff admitted that he had received fifteen hundred acres of western lands from Elliott and had the deeds thereof in his possession but refused to produce them at the trial. The plaintiff denied that the land he had received was in payment of the loan to Elliott, but admitted that he had received the land in question since said loan to Elliott, which lands Elliott had the right to convey by paying a certain amount per acre, the plaintiff paying the amount required to be paid in order to obtain a conveyance, the amount so paid by plaintiff being but a small part of and the balance of the original contract price of said lands. The plaintiff contended that the amount paid by him for said lands as aforesaid was the full value of said lands, which was controverted by the defendant.

The judge instructed the jury that if the lands were received in payment for the loan the plaintiff could not recover; and if he had received his pay for any part of said loan through said lands, whatever he had received was to be deducted from his damages. The judge also instructed the jury that in order to find for the plaintiff, it was necessary to find that the forged note was delivered at the time when the loan was effected. The jury found for the plaintiff, and assessed damages for the full amount of the note given as security, and, in answer to a question of the judge

stated that they found a conspiracy on the first and second counts. The defendant alleged exceptions.

*W. A. Gile*, for the defendant. The gist of the two first counts of the declaration is the deceit and not the conspiracy. The averments as to combination and conspiracy are mere matters of aggravation. *Skinner* v. *Gunton*, 1 Wms. Saund. 228 *d*. *Livermore* v. *Herschell*, 3 Pick. 33. *Wellington* v. *Small*, 3 Cush. 145. *Brown* v. *Castles*, 11 Cush. 348. *Hayward* v. *Draper*, 3 Allen, 551. *Parker* v. *Huntington*, 2 Gray, 124. *Pasley* v. *Freeman*, 3 T. R. 51. *Morgan* v. *Bliss*, 2 Mass. 111. *Edwards* v. *Marcy*, 2 Allen, 486. It was requisite for the plaintiff to prove, to sustain this action, that the representations were made as alleged ; that they were false ; that the defendant knew them to be false ; that the defendant intended to deceive the plaintiff thereby ; that the plaintiff relied upon them in making the contract for the loan ; that the plaintiff sustained damages by reason thereof. *Tryon* v. *Whitmarsh*, 1 Met. 1. *Pearson* v. *Howe*, 1 Allen, 207. *Brown* v. *Castles*, 11 Cush. 348. It was therefore not enough to prove that the defendant had reasonable cause to believe that the note was forged and that the representations were false. *Pearson* v. *Howe, supra. Commonwealth* v. *Davis*, 11 Gray, 4. *Hartford Ins. Co.* v. *Matthews*, 102 Mass. 221.

*F. P. Goulding*, for the plaintiff.

WELLS, J. This action is to recover damages for defrauding the plaintiff by inducing him to take, as security for a loan to one Elliott, a forged and worthless note purporting to be made by one Ward. The defendant is a broker. The first two counts of the declaration allege that he conspired and confederated with Elliott thus to injure, cheat and defraud the plaintiff ; and the jury answered specially that they found such a conspiracy.

1. The defendant introduced evidence tending to show that the plaintiff also took as security for the same loan certain due bills of another party ; and, to show " the validity of said due bills as security," offered to show that one Sibley had lent money to Elliott " taking the same due bills as security therefor, and that at the time of said loan by plaintiff part' of said due bills were held by said Sibley as security for loans." This latter evidence was excluded, and rightly. The point needs no discussion.

2. The plaintiff introduced evidence that the defendant made certain representations orally, " concerning the conduct, character, credit, ability and dealings of said Elliott, to enable said Elliott to obtain said loan from the plaintiff ; " and testified that he " relied upon Elliott's ability, as represented by the defendant, in making the loan ; that he believed the due bills to be good when he received them as security for his loan, and agreed to make said loan to said Elliott upon said representations." The defendant requested the court to rule that " if the plaintiff relied upon the verbal representations of the defendant and by reason of said representations agreed to loan and did loan the alleged amount, the action cannot be maintained." This ruling was rightly refused. Reliance upon such representations and securities is not inconsistent with reliance also, at the same time, upon other collateral security for the same loan.

3. The defendant requested the court to rule that " if the jury believed that the defendant intended that Elliott's note to the plaintiff should be paid when it fell due, they must find for the defendant. This ruling was rightly refused. The intention and expectation to pay does not relieve the false conduct of the parties of its character as a fraud upon the person upon whom it is practised. *Commonwealth* v. *Coe*, 115 Mass. 481.

4. It is stated in the bill of exceptions that " the only representation sought to be proved as to the forged note against the defendant" was that he knew nothing about the note or John Ward ; and this was admitted to have been made. The defendant requested the court to rule " that if the jury are satisfied that the defendant made false representations to the plaintiff concerning his knowledge of the Ward note, and that the defendant was so situated at the time said note was made and passed to the plaintiff as to have had reasonable cause to believe said note was forged, and that the representations made by him to the plaintiff were false, yet if he did not absolutely know that such note was forged or such representations false when made, the jury should find for the defendant." This also was rightly refused. The defendant is charged with assisting Elliott to cheat and defraud the plaintiff by means of the forged note. If Elliott was guilty, the defendant's false statement that he knew nothing about the note, when in fact he had reasonable cause to believe it to be forged,

was sufficient to warrant the jury in finding that he thereby knowingly and intentionally aided in the accomplishment of the fraud.

5. The bill of exceptions contains a confused statement of certain evidence offered apparently to prove the value of certain western lands that had been conveyed by Elliott to the plaintiff, the consideration for which the defendant claimed should be applied towards repayment of the loan for which the forged note was taken as security. The point of the exceptions in this particular appears to be : *First*, that the recitals of the consideration, in an unaccepted deed of adjacent lands from Elliott to the plaintiff, and in previous deeds of the same lands between other parties, were not admitted to prove the value of the lands which the plaintiff had received from Elliott. We see no reason why they should have been. *Second*, that evidence to prove " what lands in the same range and county as those purchased by the plaintiff of Elliott were worth " was rejected. The ruling of the judge at the trial upon the offer of such evidence is conclusive, unless facts appear which clearly show that it was made upon some erroneous application of legal rules. None such appear in this case.

Various other questions have been argued before us by the defendant ; but we discover no other point properly raised upon the bill of exceptions. *Exceptions overruled.*