ERASTUS M. NASH, & another, trustees, & others, *vs.* MINNESOTA TITLE INSURANCE AND TRUST COMPANY.

Suffolk.    November 13, 14, 1894. — June 12, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Deceit — False Representations — Burden of Proof — Evidence of Defendant's Intention — Testimony of Deceased Witness at Former Trial — Admission.*

In an action of deceit founded on alleged false representations of the defendant contained in a letter, the plaintiff must prove actual fraud, and, so far as the words of the letter are susceptible of explanation, the defendant may show that they were not used in the sense imputed to them by the plaintiff, and that he acted honestly, and that there was no intention on his part to state anything falsely. FIELD, C. J. & HOLMES, J. dissenting.

The rule that, on a rescission of a contract for fraud, the plaintiff in an action between the original contracting parties can recover back from the defendant the whole consideration paid for the goods, does not apply where the defendant is a stranger to the consideration, in which case the measure of damages is the difference between the actual value of the goods and their value as it would have been if the representation had been true ; and a plaintiff who was induced to purchase goods by the fraudulent representations of the defendant, and who has parted with the goods, may recover under a declaration in tort which goes upon a rescission of the contract, if the declaration sufficiently charges the fraud and the damage to the plaintiff resulting from it, after striking out everything alleged in regard to rescission.

In an action of deceit by A. and others against B., founded on false representations of B. contained in a letter to C. as to the title of certain real estate upon which bonds were issued by C., another letter from B. to D. is competent evidence against B., not only as a statement that C. said he sold bonds to D., who was one of the plaintiffs and who acted as agent of others of the plaintiffs in the purchase of bonds from C., but as an assumption that what he said was true, and as an implication that the information had been communicated in such a way and under such circumstances as to be trustworthy, the letter being in the nature of an admission that the sale had been made as C. said it had.

ELEVEN CASES for false and fraudulent representations made by the defendant, whereby the plaintiffs were induced to purchase certain bonds whose payment was secured by a mortgage to the defendant of certain real estate in Minneapolis in the State of Minnesota.

The declaration in the first case alleged that the defendant corporation was duly established under the laws of the State of Minnesota, with its principal place of business in Minneapolis in that State, to examine and insure titles and to act as trustee under trust deeds and mortgages; that it sent out its circulars to that effect, and had thereby done a large business in the State of Massachusetts; that about February 1, 1890, it contracted with George Walter Davis to receive a certain tract of land in Minneapolis known as the "Hedderly tract" (description given); that the defendant contracted to act as trustee under the conveyance for the payment of $150,000 of bonds of Davis, to be issued and sold by him, and contracted to issue to each purchaser a policy of title insurance, insuring the title to the tract to be free from encumbrance; that the defendant on February 1, 1890, as a consideration for the contract, received from Davis the sum of one thousand dollars and a conveyance in fee and mortgage in trust of the land, upon the issuance by Davis of the bonds certified as trustee upon each bond, that it was one of the series amounting to $150,000, and after having certified all of said bonds, delivered them to Davis; that in order to induce the persons to whom Davis might offer the bonds to become purchasers, the defendant, on or about February 6, 1890, gave Davis a letter falsely and fraudulently representing that the tract of land was free from encumbrance, whereas it was subject to a prior mortgage of $30,000; that all the defendant's representations were known by it to be false and untrue; that the letter aforesaid was shown by Davis to the plaintiffs, who, deceived thereby and relying thereon, were induced to purchase and did purchase seven of said bonds, amounting to $6,500, which, with the policy of title insurance of the defendant, were delivered to the plaintiffs; that the interest maturing on said bonds on August 1, 1890, was paid by Davis; that the interest maturing on February 1, 1891, was not paid; that thereafter the plaintiffs discovered the false and fraudulent character of the defendant's

representations, and on May 1, 1891, elected to rescind, and did rescind and repudiate their purchase of bonds from Davis, and notified him thereof, and tendered to him the bonds with interest paid since the purchase, with interest on interest to the said May 1st, and tendered to him the title insurance policy and demanded of him the repayment of the amounts paid to him for the bonds, with interest to the day of tender ; that Davis declined to receive the bonds, policy, and money, and refused to pay and continues to refuse to pay the sums demanded ; that thereafter the plaintiffs notified the defendant of the rescission and repudiation of the plaintiffs, and of Davis's declination to accept the tender, and made the same demand upon and tender to the defendant which they had made to Davis ; that the defendant refused to accept said tender or to pay the plaintiffs the sums demanded ; that the plaintiffs thereupon brought into court the bonds and coupons, the amount of coupons paid on August 1, 1890, with interest thereon to May 1, 1891, and the policy of title insurance issued to the plaintiffs by the defendant, and tendered the same to the defendant.

The declaration in each of the other cases was the same, except the allegation of the number of bonds and the alleged value.

The answer was: 1. A general denial.    2. That " on February 6, 1890, and for many months prior thereto, there had been upon the Hedderly tract, so called, a mortgage held and owned by one Henry W. Bartol, which mortgage was not then due.    And the defendant says, that in order to protect itself and the *bona fide* holders of any bonds, and any policies of insurance covering said Hedderly tract, this defendant did, when said mortgage became due, purchase the same, and has since discharged the same so that it is no longer an encumbrance upon said tract of land.    And this defendant says that the plaintiffs, if they shall prove that they have ever purchased and owned any of said Davis bonds, so called, did accept from this defendant a policy of title insurance indemnifying them against all defects in the title to said Hedderly tract."

Trial in the Superior Court, before *Braley*, J., who ruled that, it appearing that after the rescission and cancellation of the contract with Davis notice was communicated of that fact to the defendant, and tender made of the bonds, etc., the measure

of damages in each case, except that of Jeremiah Plympton, who was one of the plaintiffs, would be the amount of money paid by each plaintiff for bonds, with interest thereon from the time of purchase and by agreement of the plaintiffs, less the amount of interest received on account of the bonds, with interest upon that interest deducted.

The jury returned verdicts for the several plaintiffs with the exception of Plympton, in accordance with the instructions of the judge; and the defendant alleged exceptions.

The case was argued at the bar in November, 1894, and afterwards was submitted on the briefs to all the judges.

*A. A. Strout & E. L. Rand,* for the defendant.

*R. M. Morse & J. W. Keith,* for the plaintiffs.

KNOWLTON, J. These cases have once before been considered by this court, (see 159 Mass. 437,) and the principal question then raised was whether there was any evidence of fraud on the part of the defendant. It was held that the defendant's statement in regard to the title, taken in connection with the context of the letter and the circumstances under which it was written, purported to be a representation that the defendant had examined the title to the mortgaged real estate, and had found it to be perfect.* The property was subject to a prior mortgage of thirty thousand dollars, as the defendant's officers well knew. On this part of the case the only question was whether there was any evidence of fraud to submit to the jury, not whether there might be explanations which would relieve the defendant from the imputation against it. At the last trial the defendant offered to show that the words were not used in the sense in which they were understood by this court, and that its officers acted honestly, and that there was no intention on their part to state anything falsely. The evidence was rejected, and the ruling was, in substance, that in view of the admitted facts that the defendant's officer knew of the existence of the prior mortgage, and that this letter was to be used to induce persons to buy the mortgage bonds, the representation was, as matter of law, fraudulent. The exception to this ruling presents the question,

---

* The facts in these cases may be found in the report of the cases of *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437.

What must be proved to establish a charge of an actionable false and fraudulent representation ? On the precise question now before us the law of England has been finally settled by the case of *Derry* v. *Peek*, 14 App. Cas. 337, in which it was held unanimously that in an action of deceit there can be no recovery unless fraud is proved. In delivering the principal opinion, Lord Herschell said : " I think the authorities establish the following propositions. First, in order to sustain an action of deceit, there must be proof of fraud, and nothing short of that will suffice. Secondly, fraud is proved when it is shown that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false. Although I have treated the second and third as distinct cases, I think the third is but an instance of the second, for one who makes a statement under such circumstances can have no real belief in the truth of what he states. To prevent a false statement being fraudulent, there must, I think, always be an honest belief in its truth. And this probably covers the whole ground, for one who knowingly alleges that which is false has obviously no such honest belief. Thirdly, if fraud be proved, the motive of the person guilty of it is immaterial. It matters not that there was no intention to cheat or injure the person to whom the statement was made." In other parts of the opinion, and in the opinions of the other law lords in the same case, and in other cases which have since been decided, it is made clear that by the law of England mere ignorance, or negligence, or stupidity on the part of the person making the representations does not constitute fraud if he intends honestly to tell the truth, although his statements understood according to their seeming meaning may be ever so misleading. *Glasier* v. *Rolls*, 42 Ch. D. 436. *Angus* v. *Clifford*, [1891] 2 Ch. 449. *Le Lievre* v. *Gould*, [1893] 1 Q. B. 491. In this particular the decisions in this Commonwealth are of similar import. *Tryon* v. *Whitmarsh*, 1 Met. 1. *Page* v. *Bent*, 2 Met. 371. *Pearson* v. *Howe*, 1 Allen, 207. *King* v. *Eagle Mills*, 10 Allen, 548. *Hartford Live Stock Ins. Co.* v. *Matthews*, 102 Mass. 221. *Fisher* v. *Mellen*, 103 Mass. 503. *Chatham Furnace Co.* v. *Moffatt*, 147 Mass. 403. *Holst* v. *Stewart*, 154 Mass. 445. See also *Page* v. *Parker*, 40 N. H. 47 ; *Hammatt* v. *Emerson*, 27 Maine, 308 ; *Marsh* v.

*Falker*, 40 N. Y. 562 ; *Chester* v. *Comstock*, 40 N. Y. 575 ; *Cowley* v. *Smith*, 17 Vroom, 380.

There is a good reason for this rule.   The general test to determine whether there is a liability in an action of tort is the question whether the defendant has by act or omission disregarded his duty.   In applying this test, it is always necessary first to inquire what the defendant's duty is.   In an action of deceit the defendant is ordinarily sued as one whose only relation to the transaction was that of a gratuitous informer, who had no interest in the subject to which the representations related.   On the necessary allegations of the declaration he may be assumed to have answered inquiries put by a stranger, or to have volunteered statements out of apparent friendship.   Under such circumstances, although he thinks that his statements will be acted upon by the inquirer, he has no higher duty than to answer honestly and in good faith.   If one makes a statement for a consideration as a part of a contract, it is his duty to be accurate, and ignorance or mistake will not relieve him from the consequences of an error.   In seeking a remedy from him for a mistake so made, the plaintiff in his declaration states his relation to the transaction, and sues in contract.   But one who merely answers the inquiries of a stranger, or courteously volunteers information in a matter which does not concern him, is in a position analogous to that of a gratuitous bailee of property, from whom a less degree of care is required than from a bailee for hire.   He must not intentionally mislead ; but if he answers honestly to the best of his ability, he does his whole duty.   If he is an ignorant, stupid man, and on that account the inquirer is led astray, it is not his fault, but the fault or misfortune of the person who relies upon him.   It would be unjust to visit upon him the consequences of his ignorance in a matter in which he had no interest.

If he happens to have an interest in the subject to which his representations relate, it is a matter of which the law takes no cognizance in an action of deceit.   It is not necessary to allege or prove it ; and proof of it does not affect the rights of the parties, unless the proof goes far enough to create a liability of another kind.

Of course one will be presumed to have intended his language

to be understood according to its usual meaning, and in ordinary cases, in the absence of a reasonable explanation of his mistake, his testimony that he meant something different from what he said will have but little, if any weight.   But inasmuch as the question involved is what was his state of mind, and his actual intent as distinguished from his apparent intent, he is entitled to explain his language as best he can, if it is susceptible of explanation, and to testify what was in his mind in reference to the subject to which the alleged fraud relates.   In this respect his expressions, whether spoken or written, are not dealt with in the same way as when the question is what contract has been made between two persons who were mutually relying upon the language used in their agreement.   *Hazard* v. *Loring*, 10 Cush. 267. *Thacher* v. *Phinney*, 7 Allen, 146.   *Brown* v. *Massachusetts Title Ins. Co.* 151 Mass. 127.   *Snow* v. *Paine*, 114 Mass. 520, 526. *Edwards* v. *Currier*, 43 Maine, 474.   *Norris* v. *Morrill*, 40 N. H. 395, 401.   *Gifford* v. *Thomas*, 62 Vt. 34, 35.   *Seymour* v. *Wilson*, 4 Kernan, 567.   *Thurston* v. *Cornell*, 38 N.Y. 281.   *Phelps* v. *George's Creek & Cumberland Railroad*, 60 Md. 536.   *Berkey* v. *Judd*, 22 Minn. 287.

In the present case we need not determine whether the excluded evidence on this subject was very important.   It is obvious that, if the defendant's officers knew that their statement in regard to the title was false in the sense in which they supposed it would generally be understood, it is immaterial whether or not they had a purpose to do injury or cause loss to anybody who might rely upon it.   It is enough to furnish the foundation for a liability, if they used language in regard to the title which they intended should be understood as a representation that the title was perfect when they knew it was not perfect.   *Forbes* v. *Howe*, 102 Mass. 427.   *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437.   *Commonwealth* v. *Coe*, 115 Mass. 481.   *Spaulding* v. *Knight*, 116 Mass. 148.   But a majority of the court are of opinion that it was competent for them to testify what their understanding was in regard to the meaning of the representation, and that the presiding justice gave too broad an interpretation to our former decision in the case.

The next exception relates to the rule of damages.   The pre-

siding justice ruled that, on a rescission of the contract for fraud, the plaintiffs could recover back from this defendant the whole consideration paid for the bonds.   That is the rule where the suit is between the original contracting parties.   The reason of the rule is that on a rescission of a contract the contract is avoided *ab initio,* and the rights of the parties in reference to the subject matter of it are as if no contract had ever been made.   *Milliken* v. *Thorndike,* 103 Mass. 382.   *Bassett* v. *Brown,* 105 Mass. 551. *Nealon* v. *Henry,* 131 Mass. 153.   *Ballou* v. *Billings,* 136 Mass. 307, 309.   *Snow* v. *Alley,* 144 Mass. 546.   But the defendant in this case is a stranger to the consideration, and his relation to the contracting parties is not such as to make this reason applicable.   The rule of damages in an action against a tortfeasor is that the plaintiff shall recover an amount commensurate with the wrong done him.   In a suit for a fraud in a sale of personal property, the measure of damages in common cases is the difference between the actual value of the goods and their value as it would have been if the representation had been true.   This will ordinarily make good the loss of the defrauded party.   *Morse* v. *Hutchins,* 102 Mass. 439.   *Page* v. *Parker,* 43 N. H. 363. *Northrop* v. *Hill,* 57 N. Y. 351, 357.   That is the general rule in cases like the present, and the important question before us is whether there is anything in the facts disclosed that warrants the application of a different rule.

It is clear that mere fraud of a third party which induces the purchase of goods will not give the purchaser a right to rescind the contract.   If the seller is not a party to the fraud, the contract must stand.   *Root* v. *Bancroft,* 8 Gray, 619.   *White* v. *Graves,* 107 Mass. 325.   *Martin* v. *Campbell,* 120 Mass. 126. *Fort Dearborn National Bank* v. *Carter,* 152 Mass. 34, 38.   *Pulsford* v. *Richards,* 17 Beav. 87, 95.   *Masters* v. *Ibberson,* 8 C. B. 100.   It is clear, therefore, in such a case, that the injured party can recover damages for the injury only under the common rule. Looking then only at the relations of the parties to this suit to each other, without regard to the conduct of the seller of the bonds, it will be conceded that there is no right of rescission, and no right to recover back the consideration.   If we assume, as we well may on the facts of this case, that the seller was a party to the fraud and knowingly received the benefit of it, there is a

right of rescission and a right to recover back the consideration in favor of the plaintiff as against him. But that right grows out of the conduct of the seller of the bonds in practising the fraud, and it does not bring the defendant corporation into any relation to the consideration, nor make it a party to the contract, nor create any new rights in favor of the plaintiff against it. *Wyeth* v. *Morris*, 13 Hun, 338. *Marston* v. *Singapore Rattan Co. ante*, 296. As a preliminary to the right to sue for the consideration, there must be a return or a tender of return of the property that will put the other party *in statu quo*. The plaintiff, having made a tender of the bonds to Davis, the seller of them, who refused to receive them, made a similar tender to the defendant. There is a manifest inconsistency between an attempt to get back the consideration from Davis on the ground that the property in the bonds was returned to him by reason of the rescission, and an attempt to turn over the property to the defendant without the consent of Davis, and thereby to make it accountable for the money originally paid to Davis. In rescinding a contract, and in enforcing rights growing out of such rescission, one would expect to look only to the other party to the contract. The nature and effect of rescission are such that they can have no consequences except as against the other party to the contract. The only injury which the law recognizes as done to the plaintiff by the defendant in this case was by a false representation that the title to the property was perfect. Whatever the plaintiffs may have suffered from other causes, their loss from this cause will be made up to them if the defendant pays the difference between the value of the bonds as they were and their value as they would have been if the title had been perfect. We do not think the plaintiffs' rescission of the contract on account of the fraud defeats their right to recover these damages from a third party, so long as they have failed to obtain satisfaction for their injury, either by a restoration or recovery of the consideration, or otherwise.

The only case relied on by the plaintiffs in support of a different rule of damages is *Hedden* v. *Griffin*, 136 Mass. 229. On a hasty reading of that case, it might seem to be an authority in favor of the plaintiffs' contention on this point, but a more careful examination will show that it is not. No such question as

that now before us was raised or considered in that case. The question was whether the plaintiff, who had been induced by the fraud of an agent of a life insurance company to take out a policy of life insurance, could, on discovering the fraud six months afterwards, rescind the contract, return his policy, and recover back the premium paid. He had enjoyed protection for six months under a policy which the company could not avoid, and if he had deceased before discovering the fraud his administrator might have collected from the company the sum of ten thousand dollars; but it was held that he was not thereby precluded from rescinding the contract and recovering back the consideration, less the value, if any, of the insurance which he had received under the contract. It was intimated in the opinion, although not decided, that he could recover back the whole consideration, without any deduction for the protection which he had before rescinding the contract. The transaction was not a sale of goods, but a contract for the most part executory. So far as the contract was still executory at the time of the discovery of the fraud, he plainly should have a right to rescind. See *Fisher* v. *Metropolitan Ins. Co.* 160 Mass. 386 ; *S. C.* 162 Mass. 236. What the rule would be if such a policy remained in force a much longer time before discovery of the fraud was not stated, but no question was made in the case in regard to the right to recover of the agent who committed the fraud to the same extent as if the suit had been against the principal. Under the facts of that case, such a question could not successfully have been raised by the defendant. The money which was obtained by the fraud was paid into his hands by the plaintiff. On a rescission of the contract, the contract was annihilated, and after a demand the guilty agent could not justify under it either his payment of the money to his principal, or a longer detention of it by himself. Plainly the plaintiff was entitled to recover back from him the money which was paid into his hands less the deduction, if any, which ought to be made for the insurance which the plaintiff had before discovering the fraud.

The defendant contends that it should have been permitted to show, in mitigation of damages, that it had procured an assignment of the mortgage, and that it tendered a discharge of it to the plaintiffs at the trial ; but we are of opinion that the ruling

on this point was correct.*    The defendant may hold and use its mortgage in any lawful way, but the plaintiffs ought not to be compelled to receive the discharge of it in mitigation of their damages after the expiration of so long a time.    If the mortgage were discharged, it would not, as matter of law, limit their recovery to nominal damages.    If there had been no encumbrance, they might long ago have sold the bonds on better terms than can be obtained now.    Moreover, the commission of the fraud, if fraud is proved, was a wilful wrong, and the case is analogous to a wilful conversion of property, and an offer to return it in mitigation of damages after its condition has changed and its value has depreciated.    *Stickney* v. *Allen*, 10 Gray, 352.    *Dahill* v. *Booker*, 140 Mass. 308, 310.    *Bigelow Co.* v. *Heintze*, 24 Vroom, 69.    *Yale* v. *Saunders*, 16 Vt. 243.    *Rutland & Washington Railroad* v. *Middlebury Bank*, 32 Vt. 639.    Practically, it might be difficult in this case to measure the amount that should be allowed now on account of a discharge of the mortgage in mitigation of damages, and we are of opinion that we ought not to compel the plaintiffs to accept the tender, or to make an allowance in the assessment of damages as if they had accepted it.

The evidence of J. Plympton was rightly received.    The declaration in his case is sufficient to justify a recovery of damages on the theory on which his case was presented to the

---

* The bill of exceptions recites :

" The defendant offered to show that at or about the time the prior mortgage became due it took an assignment of that mortgage to itself, and that subsequent thereto it had prepared a valid discharge of said mortgage, which discharge it brought into court and tendered to the plaintiffs; and thereupon the judge ruled as follows : ' The ruling of the court is that the offer of the defendant to show that, since the cause of action accrued to the plaintiffs, it has taken an assignment to itself of the outstanding mortgage, is not competent in mitigation of damages.    Secondly, the offer of the defendant to show that after taking the assignment of the mortgage to itself it has discharged, or offers to tender to the plaintiffs in these cases a full discharge of that mortgage which the plaintiffs can record, is not competent in mitigation of damages, and saves the rights of the defendant.'    Thereupon a valid discharge of the mortgage was tendered to each of the plaintiffs, which was admitted by the plaintiffs to be sufficient in form and properly executed. The plaintiffs declined to accept the discharge, and the judge excluded the discharge, and ruled that it could not be considered in mitigation of damages; and the defendant excepted."

jury.*   If everything alleged in regard to rescission is stricken out, enough remains upon which to found the verdict.   The letter of September 8, 1890, from Barnes to James M. Keith was competent.†   It was not only a statement that Davis said he sold bonds through Keith, but it was an assumption that what he said was true.   It implied that the information had been communicated in such a way, and under such circumstances, as to be trustworthy, and as against the defendant it was in the nature of an admission that the sale had been made as Davis said it had.

We think that there is no occasion to consider more particularly the questions argued by the defendant.   Such of them as

---

* The bill of exceptions recites:

"Jeremiah Plympton having died since the first trial, his evidence at the former trial was read, in which he testified as follows: ' I am one of the plaintiffs ; had had business with the defendant prior to February, 1890. Have no recollection of ever having seen the defendant's prospectus.   I purchased two bonds.   Before purchasing, saw the letter of Feb. 6, and the printed advertisement, and read them both.   Q. What induced you to buy those bonds?   A. The statement of the president of the company principally.'

"On cross-examination he testified : ' Mr. Keith showed me the location of the land.   I, in part, relied upon his representations that the bond was good. I did not know Messrs. Barnes or Fish or any officer of the defendant company, and hardly think I would have taken the bonds without making further inquiries if a stranger had offered them to me with the letter and the advertisement.   I bought the bonds of Keith and paid him for them.'

"The testimony of Plympton was admitted subject to the defendant's exception, on the ground that, as Plympton had sold his bonds, this defendant could not be held under this declaration."

In the case of Plympton, under instructions from the judge, the jury returned a verdict of three hundred dollars for the plaintiff.

† The bill of exceptions recites:

"Subject to the defendant's exception, the plaintiffs introduced the following letter, which letter counsel for the plaintiffs cited in his argument to the jury as conclusive proof that Keith acted as the agent of Davis :

"' Minneapolis, Minn., 9/8, 1890.   James M. Keith, Esq., Boston, Mass. Dear Sir, — Mr. George W. Davis has paid the last coupon received from your clients, but says he sold through you $32,000 of bonds, interest upon which is $1,120 for six months.   We have received coupons to the amount of only $910.   Who has the others, and why don't they send them for collection?   Coupons received were sent by yourself, Jeremiah Plympton, A. L Plympton, S. H. Brown, Jr., Elizabeth D. Sibley, and Henry A Potter. Yours truly, J. U. Barnes, Pl.' "

James M. Keith was one of the plaintiffs, and through him others of the plaintiffs obtained their bonds which had belonged to Davis.

are not covered by what we have already said will not be likely
to arise at another trial.                    *Exceptions sustained.*

HOLMES, J.  I am unable to agree with the decision reached
by a majority of the court on the first point discussed by them.
I will not in this place go into any extended discussion of gen-
eral principles.  If I were making the law, I should not hold a
man answerable for representations made in the common affairs
of life without bad faith in some sense, if no consideration was
given for them, although it would be hard to reconcile even that
proposition with some of our cases.  But the proposition, even
if accepted, seems to me not to apply to this case.  The proper
meaning of the words used by the defendant has been settled by
this court already.  159 Mass. 437.  The representation was not
made in casual talk, but in a business matter, for the very pur-
pose of inducing others to lay out their money on the faith of it.
When a man makes such a representation, he knows that others
will understand his words according to their usual and proper
meaning, and not by the accident of what he happens to have in
his head, and it seems to me one of the first principles of social
intercourse that he is bound at his peril to know what that
meaning is.  In this respect it seems to me that there is no
difference between the law of fraud and that of other torts, or of
contract or estoppel.  If the language of fiction be preferred, a
man is conclusively presumed in all parts of the law to contem-
plate the natural consequences of his act, as well in the conduct
of others as in mechanical results.  I can see no difference in
principle between an invitation by words and an invitation by
other acts, such as opening the gates of a railroad crossing,
(*Brow* v. *Boston & Albany Railroad*, 157 Mass. 399,) or an
intentional gesture, having as its manifest consequence, accord-
ing to common experience, a start and a fall on the part of the
person toward whom it is directed, in either of which cases I
suppose no one would say that a defendant could get off by prov-
ing that he did not anticipate the natural interpretation of the
sign.  Of course, if the words used are technical, or have a pe-
culiar meaning in the place where they were used, this can be
shown ; if by the context, or the subject matter, or the circum-
stances, the customary meaning of the words is modified, this can

be shown by proof of the circumstances, the subject matter, and the context; but when none of these things appears, a defendant cannot be heard to say that for some undisclosed reason he had in his mind, and intended to express by the words, something different from what the words appear to mean, and were understood by the plaintiff to mean, and are interpreted by the court to mean, whether the action be in tort or contract.

Neither, in my opinion, are there any peculiar safeguards set up about the action for deceit. That action was given by the common law for any false statement of present facts of which the defendant took the risk, and which was followed by damage. He might take the risk at different points in different cases. A false warranty used to be laid as a deceit in tort for a false and fraudulent representation. Clift, Entries, 932, pl. 40. Liber Placitandi, 40, pl. 54, 55. Y. B. 11 Ed. IV. pl. 10. So even an implied warranty. *Brown* v. *Edgington*, 2 Man. & G. 279. See Y. B. 11 Ed. IV. 6 b; Keilw. 91, pl. 16. Yet it was not necessary to lay the *scienter*, or, if you laid it, to prove it, for the plain reason, as Shaw, C. J. puts it, in substance, that the defendant is answerable for the facts, however honest he may have been. *Norton* v. *Doherty*, 3 Gray, 372, 373. *Schuchardt* v. *Allens*, 1 Wall. 359, 368. *Williamson* v. *Allison*, 2 East, 446. *Gresham* v. *Postan*, 2 C. & P. 540. *Denison* v. *Ralphson*, 1 Vent. 365, 366. In the last century an alternative form in assumpsit was introduced, (*Stuart* v. *Wilkins*, 1 Doug. 18, 21, Lawrence, J., and *Williamson* v. *Allison*, 2 East, 446, 451,) and it may be that now we should require the warranty to be alleged, which has the advantage of telling the defendant more exactly what the case is against him. *Cooper* v. *Landon*, 102 Mass. 58. But there is no doubt about the common law. I am of opinion, as I have stated, that in a case like the present a man takes the risk of the interpretation of his words as it may afterwards be settled by the court.

I am authorized to say that the Chief Justice agrees with the foregoing dissent.