HATTON v. COOK.　(No. 6734.)

(Supreme Court, Appellate Division, First Department.　February 5, 1915.)

1. FRAUD (§ 11*)—FRAUDULENT REPRESENTATIONS—MATTERS OF OPINION.

Statements of the president and fiscal agent of a corporation that it was in a flourishing financial condition and was able to pay 6 per cent. dividends, whereby plaintiff was induced to exchange bonds of the corporation for its preferred stock, were mere expressions of opinion, and would not support an action for deceit, as plaintiff must have recognized that the dividends must depend on the future prosperity of the company, while the meaning of the words "flourishing financial condition" depend largely on the history and policy of the business to which they apply, as well as to the judgment or opinion of the persons using them.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 12, 13; Dec. Dig. § 11.*]

2. FRAUD (§ 59*)—ACTIONS FOR DECEIT—MEASURE OF DAMAGES.

Where a person, induced by the false representations of the president and fiscal agent of a corporation as to its financial condition to exchange the bonds of the corporation for preferred stock, instead of treating the contract as void and seeking to recover the bonds or their value, sued the president for deceit, the measure of damages was the difference between the value of the stock and what it would have been worth, had the representations been true.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 60–62, 64; Dec. Dig. § 59.*]

Appeal from Trial Term, New York County.

Action by Elizabeth S. Hatton against George D. Cook. From a judgment on a verdict for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Robert B. Honeyman, of New York City, for appellant.
George B. Covington, of New York City, for respondent.

McLAUGHLIN, J. Action to recover damages for deceit. The defendant, for some time prior to the transactions involved in the subject-matter of this action, was president of the Cafetal Carlota Company, a corporation owning and operating a coffee plantation in Mexico. He was also a partner in the banking firm of George D. Cook & Co., in the city of New York, which acted as the fiscal agent of the corporation. Some time prior to May, 1911, plaintiff was the owner of 17 out of a total issue of 150 of the first mortgage bonds of the Cafetal Company, of the par value of $1,000 each, and stock of the same par value, which was issued as a bonus with the bonds. Up to the date last mentioned the interest had been paid upon the bonds, but no dividend had been paid upon the stock. In the spring of 1911 the Cafetal Company proposed to its stockholders an issue of $200,000 preferred stock, for the purpose of improving its property and retiring its outstanding bonds. A stockholders' meeting was accordingly called for April 15, 1911, to authorize such issue, of which plaintiff had notice.

Shortly before this meeting, but after the same had been called, the plaintiff, being desirous of disposing of at least a part of her bonds, called at defendant's office and had an interview with him. She then knew that a meeting of the stockholders had been called for the purpose of authorizing an issue of preferred stock, and, after talking the matter over with the defendant, agreed to exchange with the corporation $14,000 of her bonds for a like amount of its preferred stock, when issued. Her version of the conversation which took place immediately prior to her agreement to the exchange was as follows:

"I asked him if he could sell the bonds, and we talked about it a while, and he said they were about to issue certificates for preferred stock, and that the Cafetal was a good investment. He would advise me to exchange my bonds, of which I had $17,000, for the certificates of preferred stock that they were about to issue. I asked him if the financial condition of the Cafetal was good, and he said it was in flourishing condition. Then I asked him if they were able to pay me 6 per cent., which I was getting on the bonds I held. He said they were. Then I agreed, after talking with him about it, to turn over $14,000 worth of my bonds for the preferred stock.  *  *  *"

Shortly thereafter she sent to the corporation 14 of the bonds, in return for which the following receipt was given:

"Cafetal Carlota Company.

"Temporary Receipt.

"6 Per Cent. Cumulative Stock, Cafetal Carlota Company.

"Received of Elizabeth Snyder Hatton fourteen thousand dollars, being payment in full for 140 shares of 6 per cent. cumulative stock of the Cafetal Carlota Company, of par value of $100.00. Such stock to be authorized and issued upon an increase of the capital stock of such company, and to be delivered when and as issued.

"[Seal.]                         Cafetal Carlota Company,
                                "Geo. D. Cook, President.

"New York, March 1, 1911."

There is no evidence that this receipt was ever returned to the company, or that certificates for stock were ever delivered to the plaintiff. In November, 1911, the Cafetal Company defaulted for the first time in the payment of interest on its bonds, and this action was commenced a year later to recover from the defendant the damages alleged to have been sustained by the plaintiff by reason of his inducing her to make the exchange referred to. The plaintiff had a verdict for $10,500, and from the judgment entered thereon defendant appeals.

[1] The contention of the plaintiff is that the judgment can be sustained, because she was deceived by defendant as to the financial condition of the corporation. At the trial, when asked which statement of defendant induced her to exchange the bonds for preferred stock, she replied:

"Because he said the company was in flourishing condition, and they were able to pay me the 6 per cent. dividend, which was the rate of interest I was getting on my bonds."

I think this is insufficient to maintain an action to recover damages for deceit. Defendant's statement as to the financial condition of the company and the dividends which it could thereafter pay were expressions of opinion and nothing more. In Sparman v. Keim, 83 N. Y. 245, the defendant was charged with fraud in representing that a business

"would yield large profits" and that "it was a good paying business." The court said:

> "The representations were promissory and matter of opinion, and had respect to the developments of the future. There was nothing in them on which to found an action ex delicto."

I think the same may be said of the representations under consideration. The dividends which the corporation would be able to pay depended upon the future prosperity of the company, and plaintiff must have recognized that fact. Not only this, but the words "flourishing financial condition" convey no definite information, since the meaning depends largely upon the history and policy of the business to which they apply, as well as to the judgment or opinion of the person using them. Indeed, there is nothing here to indicate that the statement was not made by the defendant in the utmost good faith. The last crop of coffee had been the largest one that the Cafetal plantation had ever produced, and the plantation itself was being constantly improved. The plaintiff knew, at this time, that the preferred stock was to be issued for the purpose of acquiring additional capital to improve the property, as well as to retire the outstanding bonds. The defendant's statements, even though they may have misled and deceived the plaintiff, did not justify the maintenance of this action. Van Slochem v. Villard, 207 N. Y. 587, 101 N. E. 467; People v. Majorana, 155 App. Div. 432, 140 N. Y. Supp. 8.

[2] But, even if the representations of the defendant were sufficient to sustain an action for deceit, the judgment, nevertheless, must be reversed. At the close of the trial, counsel for the defendant requested the court to charge that the measure of damages, in the event that the jury rendered a verdict in favor of the plaintiff, was the difference between the value of the stock which the plaintiff received, or was entitled to receive, and what it would have been worth, had the representations been true. Under the facts presented, the request embodied a correct statement of the law, and the refusal to so charge was error. The defendant personally did not contract with the plaintiff. The agreement for the exchange of bonds for stock was between her and the corporation. The liability of the defendant, if any, he not being a party to the contract, was solely for damages suffered by reason of his deception. The question has been considered in numerous authorities, and one where the facts were quite similar to these here involved is Nash v. Minnesota Title Co., 163 Mass. 574, 40 N. E. 1039, 28 L. R. A. 753, 47 Am. St. Rep. 489, cited and approved in Heckscher v. Edenborn, 203 N. Y. 210, 96 N. E. 441. In the Nash Case the court said:

> "The next exception relates to the rule of damages. The presiding justice ruled that, on a rescission of the contract for fraud, the plaintiffs could recover back from this defendant the whole consideration paid for the bonds. That is the rule where the suit is between the original contracting parties. * * * But the defendant in this case is a stranger to the consideration, and his relation to the contracting parties is not such as to make this reason applicable. The rule of damages in an action against a tort-feasor is that the plaintiff shall recover an amount commensurate with the wrong done him. In a suit for a fraud in a sale of personal property the measure of damages in common cases is the difference between the actual value of the goods and their value as it would have been if the representation had been true."

The plaintiff, it must be borne in mind, did not elect to treat the contract void for deceit, for in that case her action would have been against the corporation, with which she contracted, to recover from it either her bonds or their value. Having brought the action against the defendant, a third party, who did not receive the bonds, it was for damage and nothing else. The court should have instructed the jury as requested.

The judgment and order appealed from are therefore reversed, and a new trial ordered, with costs to appellant to abide event. All concur.